BUILDING SERVICE LOCAL 47 CLEAN-
ING CONTRACTORS PENSION PLAN,
et al., Plaintiffs–Appellees, Cross–Appel-
lants (93–4133),

v.

GRANDVIEW RACEWAY,
et al., Defendants,

Northeast Ohio Harness, et al.,
Defendants–Appellants (93–
3998/4054), Cross–Appellees.

Nos. 93–3998, 93–4054 and 93–4133.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1995.

Decided Feb. 16, 1995.

his extortion conviction and sentence does not    impact his sentence on the remaining counts.

**1394**

Eben O. McNair, (argued and briefed), Timothy J. Gallagher (briefed), Schwarzwald & Rock, Cleveland, OH, for plaintiffs-appellees in Nos. 93-3998 and 93-4054, 93-4133.

William F. Snyder (briefed), Laurence R. Synder (argued), Marshman, Snyder & Kapp, Cleveland, OH, for defendants-appellants in Nos. 93-3998 and 93-4054.

William F. Snyder (briefed), Laurence R. Snyder (argued), Marshman, Snyder & Kapp, for William F. Snyder, Robert D. Stakich, Northeast Ohio Harness and Loren W. Houston in No. 93-4133.

William F. Snyder (briefed), Laurence R. Synder (argued), Marshman, Synder & Kapp, James Joseph Bartolozzi, Kahn, Kleinman, Yanowitz & Arnson, Cleveland, OH, for Victor D. Ippolito in No. 93-4133.

Before: JONES, CONTIE, and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Defendants appeal and plaintiffs cross-appeal the district court's judgment and award of attorneys' fees for plaintiffs in this action to recover allegedly delinquent pension fund contributions. On appeal, the issues raised by defendants are (1) whether the district court erred in admitting and relying on the summary of deficiencies prepared for trial purposes by plaintiffs' independent auditor, (2) whether there was sufficient evidence of record to support the inclusion of charges for plaintiffs' audit expenses in the district court's judgment, (3) whether the district court erred by failing to credit defendants with additional credits for payments made by or on behalf of defendants in 1984, and (4) whether the district court abused its discretion in awarding attorneys' fees. On cross-appeal, the sole issue raised by plaintiffs is whether the district court applied an improper methodology in reducing the requested attorneys' fee award. For the reasons that follow, we affirm in part and reverse in part.

## I.

### A.

The plaintiffs in this case are Building Service Local 47—Cleaning Contractors Pension Plan and its trustees, and Local 47 Welfare Fund No. 1 and its trustees (collectively referred to as "the Funds"). Each fund is an employee benefit plan and multiemployer plan as defined in 29 U.S.C. §§ 1002(3) and 1002(37). The original defendants in this case were Grandview Racing ("Grandview"), an Ohio limited partnership, and its general partners, Northeast Ohio Harness ("NEOH"), an Ohio partnership,

and its partners, Painesville Raceway, Inc. ("Painesville"), and The Ohio State Racing Commission. The only defendants on appeal are NEOH and its partners (collectively referred to as "defendants"). The Funds sued defendants to collect allegedly delinquent pension and welfare benefit contributions that arose out of defendants collective bargaining agreements with the Funds. The Funds also sought contractual remedies provided in the collective bargaining agreements, as well as remedies under the Employee Retirement Income and Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").

The Funds' principal witness at trial was Charles C. Drake, a certified public accountant.[1] At the time of the audits in question, Drake was an employee of the company that acted as the third-party administrator of the Funds. As such, Drake was responsible for overseeing the audit program. Drake currently has his own accounting firm and he has a relationship with the Funds as an independent auditor. In 1983, after the Funds' trustees had reason to believe that NEOH was delinquent in making employee contributions, an audit was conducted of NEOH's records. This audit, which was in compliance with the Funds' general policy regarding the scheduling of audits, also involved other entities, including Grandview.[2] Drake was primarily responsible for conducting the 1983 audit; he supervised one of his staff members, identified as Cheryl Luketic, and he assisted in doing work for some of the years under examination.

In conducting the 1983 audit, Drake tested daily time sheets and reviewed weekly transmittal forms, a computer generated payroll register, the federal employer contribution report (Form 941), NEOH's contribution reports to the Funds, and the collective bargaining agreements. He then prepared an audit report based on his findings. Although Drake initially combined the findings made

in regards to NEOH and Grandview because he believed the two companies were like a joint employer, he was able to distinguish between deficiency amounts attributable to each of the two companies because they had different employer identification numbers and used different reporting systems. This audit, along with a similar audit that was conducted in 1984, formed the basis for the Funds' complaint in this action.

At trial, the Funds offered into evidence Plaintiffs' Exhibit 4,[3] which is a summary and analysis of the relevant documents relating to the audits and the calculations of defendants' liabilities. Plaintiffs' Exhibit 4 was prepared from a number of source documents, all of which were independently admitted into evidence and were cross-referenced in the exhibit. The source documents included the following: (1) the collective bargaining agreements (Joint Exhibits 1 & 2); (2) NEOH's contribution reports to the Funds (Joint Exhibits 3–8); (3) the work papers prepared during the audits (Joint Exhibits 12–17); (4) calculations derived by Drake from the audit papers (Joint Exhibits 10 & 11); (5) a letter from Drake regarding the audit findings (Joint Exhibit 9); (6) copies of NEOH and Grandview checks made payable to the Funds (Joint Exhibit 18); and (7) the Funds' accounts receivable ledger for 1984 (Joint Exhibit 19).

**B.**

This action was commenced by the filing of the Funds' complaint in the district court on January 22, 1985. In the complaint, the Funds alleged that defendants were delinquent in making contributions to defendants' pension plan and welfare funds. A bench trial commenced on August 25, 1992, and concluded on August 27, 1992.

On September 30, 1992, the district court entered judgment for the Funds and against defendants for $25,316.51 in delinquent con-

1. Drake did not become licensed as a certified public accountant until July 9, 1984, although he passed the November 1983 examination.

2. Grandview, which was also conducting harness racing meets at Northfield Park and was a contributor to the Funds, was a defendant in this action until it reached an out of court settlement with the Funds on June 11, 1992.

3. The Funds subsequently offered, and the district court admitted into evidence an Amended Plaintiffs' Exhibit 4, which merely corrected minor computational errors in Plaintiffs' Exhibit 4.

tributions. The district court also awarded the Funds pre-judgment interest, ERISA interest under 29 U.S.C. § 1132(g)(2)(E), late payment assessments, audit fees and costs, and reasonable attorneys' fees, with the specific amounts of these items to be determined subsequent to the presentation of additional evidence by the Funds. On August 16, 1993, the district court awarded the Funds $908.31 in pre-judgment interest, $18,092.14 in ERISA interest, and $6772.50 in audit fees and costs. After further briefing by the parties, on September 15, 1993, the district court awarded the Funds $70,185.95 in attorneys' fees, which was less than the $99,329.99 requested by the Funds.

On October 6, 1992, the Funds filed a motion to amend the district court's findings of fact; this motion was granted by marginal entry on September 13, 1993. On October 13, 1992, defendants filed a motion to alter or amend the judgment; this motion was denied by marginal entry on September 13, 1993.

On September 8, 1993, defendants filed a notice of appeal from the district court's denial of defendants' motion to alter or amend the judgment (Case No. 93–3998). On September 23, 1993, defendants filed a notice of appeal from the district court's award of attorneys' fees (Case No. 93–4054), and on October 7, 1993, the Funds filed a cross-appeal with regard to the district court's denial of the full amount of attorneys' fees they had requested (Case No. 93–4133). Pursuant to an order of this court dated November 1, 1993, the appeals and cross-appeal were consolidated for purposes of briefing and oral argument.

## II.

### A.

■ Defendants argue that the district court erred in admitting and relying on the summary of deficiencies, designated as Plaintiffs' Exhibit 4, prepared for trial purposes by the Funds' agent. Specifically, defendants assert "that Plaintiffs' Exhibit 4 was clearly an inadmissible summary and the total reliance thereon constitutes reversible error." Appellants' Brief at 8. The Funds argue that because defendants failed to raise any objection to the admissibility of Plaintiffs' Exhibit 4 in the district court, they have waived any right to object to its admissibility on appeal.

■ Federal Rule of Evidence ("Fed. R.Evid.") 103(a) provides, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . ." Fed.R.Evid. 103(a)(1). It is well established that a party who fails to make a timely objection to the admission of evidence is precluded from raising the issue for the first time on appeal. *Gentry v. United States*, 962 F.2d 555, 558 (6th Cir.1992); *Chipman v. Secretary of Health and Human Servs.*, 781 F.2d 545, 547 (6th Cir.1986); *see also Harris Mkt. Research v. Marshall Mktg. and Communications, Inc.*, 948 F.2d 1518, 1525 (10th Cir.1991). In *Gentry*, the plaintiffs argued that a certificate of assessments and payments, introduced by the Internal Revenue Service, should not have been admissible as a business record under Fed. R.Evid. 803(6) or as a public record under Fed.R.Evid. 803(8) because it was prepared solely in anticipation of litigation. *Gentry*, 962 F.2d at 558. This court refused to consider the challenge to the certificate's admissibility because the issue was raised for the first time on appeal and the taxpayers had shown no manifest injustice that would merit resolution of the issue. *Id.* In *Chipman*, the plaintiff appealed the termination of Social Security disability benefits and, after winning reinstatement, sought to recover attorneys' fees. *Chipman*, 781 F.2d at 547. The Secretary of Health and Human Services challenged the admissibility of a document supporting the plaintiff's request for an enhanced fee. *Id.* However, this court held that the Secretary was precluded from raising the argument on appeal because a timely objection was not made at trial. *Id.*

This case is no different from either *Gentry* or *Chipman* in that defendants did not timely object to the admission of Plaintiffs' Exhibit 4 at trial; thus, they are precluded

from doing so on appeal. Moreover, prior to opening statements, the district court instructed the parties as to the method to be used to introduce exhibits: "I will ask at the end of your case whether there are any objections to the exhibits by the other party, and if there are objections, I will deal with the ones to which there are objections. If there are no objections, they will be admitted without objection." J.A. 827. To allow the parties to better plan their trial strategy, the district court added this instruction: "You can inquire at the time you wish to first use the exhibit whether or not there is going to be any objection to it, and then we can deal with it that way." J.A. 828.

When the Funds rested, they moved that all of their exhibits be admitted. Defendants raised specific objections to several of the Funds' exhibits, including Plaintiffs' Exhibit 7, and the Funds withdrew Plaintiffs' Exhibits 6, 7 and 8 because they were only offered for impeachment purposes. Defendants then objected to Plaintiffs' Exhibits 10 and 11, which were admitted based on the district court's prior ruling that they were admissible. The district court then asked defendants' counsel, "You have no objection to the other exhibits?" J.A. 831. "No, sir," defendants' counsel answered. *Id.* The district court then replied, "All right. Without objection the other ones are admitted." *Id.* Thus, not only did defendants' counsel fail to timely object to Plaintiffs' Exhibit 4, it affirmatively stated for the record that defendants had no objection to it.

Defendants claim that "Plaintiffs' Exhibit 4 was clearly an inadmissible summary," Appellants' Brief at 8, and that their objection was "forcibly brought to the attention of the court" in defendants' motion for judgment at the end of the Funds' case, Appellants' Reply Brief at 4. However, the basis upon which defendants' moved for judgment was that the audits at issue were not conducted by a certified public accounting firm. The transcript is devoid of any reference to Plaintiffs' Exhibit 4 in defendants' oral motion for judgment.

Defendants also claim that the point was made in its proposed findings of fact and conclusions of law and in its motion to alter or amend judgment. However, those documents contain no such objections. The only reference to Plaintiffs' Exhibit 4 that could possibly be construed as an objection is the statement in the proposed findings of fact and conclusions of law that Plaintiffs' Exhibit 4 was "apparently developed for purposes of this litigation." J.A. 162. Such a cursory statement hardly qualifies as an objection. Thus, because defendants did not timely object to the admission of Plaintiffs' Exhibit 4 at trial, they are precluded from doing so on appeal.

■ This court, however, is not without the power to take notice of "plain errors affecting substantial rights although they were not brought to the attention of the court." Fed.R.Evid. 103(d). This court has stated:

Plain error is that that "would 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" A court's power to review a claim of error under the plain error doctrine is discretionary and "should be exercised only in those situations in which the failure to do so would result in a manifest miscarriage of justice." The Supreme Court has noted that "the plain error exception to the contemporaneous objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'"

*Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1432 (6th Cir.1987) (citations omitted).

■ In *Helminski v. Ayerst Labs., A Div. of Am. Home Prods. Corp.*, 766 F.2d 208 (6th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985), the plaintiffs raised for the first time on appeal objections to allegedly prejudicial comments made by the district court and defense counsel. This court stated:

A party may not assert as error the introduction of evidence unless a timely objection is made. Although a court may review the introduction of evidence in the absence of an objection if it constitutes plain error and affects a party's substantial rights, an important consideration in determining whether appellate review is appro-

priate is the number of times the allegedly improper evidence was elicited without objection.

*Id.* at 211 (citations omitted). Noting that the objectionable statements were made at least four times during trial without being objected to by the plaintiff's counsel, we reasoned that the plaintiff's counsel must not have "perceived the issue as one which affected the substantial rights of his client." *Id.* Accordingly, we refused to consider the plaintiff's challenge to the comments.

Similarly, in this case, the trial transcript is replete with references to Plaintiffs' Exhibit 4. The Funds' counsel repeatedly referred to the exhibit without objection from defendants' counsel. In addition, he asked a witness to explain the nature and purpose, as well as the methodology of the exhibit. Most compelling, however, is the fact that defendants' counsel referred to the exhibit several times on cross-examination of that witness. The repeated references to the "objectionable evidence" indicate that the issue was not perceived as one which affected defendants' substantial rights. *See Helminski*, 766 F.2d at 211. Likewise, we do not believe that the admission of Plaintiffs' Exhibit 4 rose to the level of plain error and prejudiced defendants' substantial rights. Because defendants have not presented a valid basis for appeal on this issue, we are precluded from reviewing the substantive merits of this argument.

### B.

█ Defendants argue that the district court erred by granting judgment including charges for the Funds' audit expenses. Specifically, defendants argue that there was not sufficient evidence of record to support the inclusion of audit costs.[4] The Funds argue that because defendants did not raise at trial any of the objections they raise in their appellate brief, they have waived any right to object to the award of audit costs on appeal.

In *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067 (6th Cir.1990), this court rejected the defendants' argument that the district court erred in calculating the amount of damages awarded for a RICO violation. *Id.* at 1080–81. We held that because the defendants failed to submit any evidence challenging the plaintiffs' submissions with regard to damages, they could not seek review of the district court's reliance on such submissions. *Id.* at 1081.

Moreover, in *Sigmon Fuel Co. v. Tennessee Valley Auth.*, 754 F.2d 162 (6th Cir.1985), we concluded that "[the plaintiff's] reference to 'other applicable law' [did] not squarely present the argument that [the plaintiff] was entitled to interest pursuant to federal common law." *Id.* at 164. Again, in *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324 (6th Cir.1988) (citing *Sigmon Fuel*, 754 F.2d at 164–65), this court refused to review an argument that was not adequately presented in the district court. We stated, "[The plaintiff's] vague reference in his memorandum in opposition to summary judgment to the EEOC's failure to comply with its own rules does not squarely present the argument pressed here on appeal. In the interests of judicial economy and the finality of judgments, and mindful of our function as an appellate court, we decline to review this argument." *Id.* at 326. Similarly, in *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997 (6th Cir.1994), we concluded that the plaintiff's reference in a footnote to the defendant's failure to assert a statute of limitations defense did not constitute a legal argument of waiver and was insufficient to preserve the issue for appeal. *Id.* at 1002.

Likewise, in this case, defendants did not squarely present in the district court the argument that there was not sufficient evidence of record to support the inclusion of audit costs. As the Funds correctly point out, defendants did not raise at trial any of the objections that they now raise in their appellate brief. *Cf. Bank One*, 916 F.2d at 1080–81. There are only two statements,

---

4. This argument is really no different from the one just addressed in that it challenges the use of Exhibit 4 to support the judgment below. The only notable distinction is that defendants take this argument a step further by pointing out

"specific errors within Exhibit 4 which call for remand." *See* Appellants' Brief at 11. However, in the end, the only specific error that defendants raise is with regard to the sufficiency of the evidence supporting the inclusion of audit costs.

neither of which was even made until after the conclusion of the trial, that could possibly be construed as objections to the sufficiency of the evidence supporting the inclusion of audit costs. First, in defendants' proposed findings of fact and conclusions of law, defendants stated that the Funds offered no evidence in support of their claim for audit costs. J.A. 170. Second, in their motion to alter or amend the judgment, defendants state that "[t]he only evidence of the cost of this so-called audit is amounts unilaterally asserted by these same examiners in their work papers," and that "[d]espite this total lack of supporting evidence," the judgment included audit fees. J.A. 180. As in *Sigmon Fuel, Banks,* and *Noble,* these vague references fail to clearly present the objection in the district court so as to preserve the issue for appellate review. *Sigmon Fuel,* 754 F.2d at 164–65; *Banks,* 855 F.2d at 326; *Noble,* 32 F.3d at 1002. Accordingly, defendants have waived any right to object on appeal to the award of audit costs. Therefore, we need not reach the substantive merits of this argument.

## C.

■ Defendants argue that the district court erred by failing to credit defendants with additional amounts for payments made by or on behalf of defendants in 1984. Specifically, defendants argue that they were not given credit in Plaintiffs' Exhibit 4 for certain payments reflected in the Funds' accounts receivable ledger (Joint Exhibit 19). The parties appear to agree that the district court's finding, as a factual determination, is subject to review for clear error. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be

given to the opportunity of the trial court to judge of the credibility of witnesses." Fed. R.Civ.P. 52(a). "A factual determination will not be overturned unless 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake was committed.'" *Jetero Const. Co. v. South Memphis Lumber Co.,* 531 F.2d 1348, 1352 (6th Cir.1976) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Thus, our authority in reviewing factual determinations is circumscribed by the deference we must give to the district court which is in a superior position to appraise the evidence, particularly in a complicated accounting action such as this.

Both parties agree that certain payments that were made in 1984 were applied to amounts owed to the Funds by NEOH and Grandview. As Joint Exhibit 18 demonstrates, during the relevant period, NEOH made eight check payments and Grandview made six check payments to the Funds. It is the six checks issued by Grandview totaling $6000 that are at issue in this case.[5] The Funds' accounts receivable ledger (Joint Exhibit 19) indicates that the Funds originally credited the NEOH account with all checks represented by Joint Exhibit 18, including the checks issued by Grandview. However, in Plaintiffs' Exhibit 4, which was relied on by the district court in determining the deficiencies, defendants were not given credit for the six checks issued by Grandview because Drake allocated those checks to Grandview.

Defendants argue that Drake's method of allocation was arbitrary and that "[t]here is nothing in the record to support his decision to overrule the administrative people and credit these checks to Grandview." Appellants' Brief at 12. However, Drake ex-

---

5. Joint Exhibit 18 includes copies of most of those checks, all of which were drawn on the account of Grandview: a June 30, 1984 check, in the amount of $1500, payable to Building Service Local 47, Welfare Fund # 82–03279–100; a June 30, 1984 check, in the amount of $500, payable to Building Service Local 47, Pension Fund # 82–03279–000; a July 14, 1984 check, in the amount of $1500, payable to Building Service Local 47, Welfare Fund # 82–03279–100; a July 14, 1984 check, in the amount of $500,

payable to Building Service Local 47, Pension Fund # 82–03279–000 (a copy of this check is not included in Joint Exhibit 18; this information was determined from a copy of the check stub and a batch posting summary included in Joint Exhibit 18, and other information relating to this check); a July 21, 1984 check, in the amount of $500, payable to Building Service Local 47, Pension Fund # 82–03279–0000; and a July 21, 1984 check, in the amount of $1500, payable to Building Service Local 47, Welfare Fund # 82–03279–100.

plained that the NEOH general ledger account included the credits and liability not only for NEOH, but for Grandview and other employers racing at the track; Drake's testimony indicates that the balances were originally combined because the Funds viewed NEOH and Grandview as a joint employer. By 1984, the only remaining contributing employers were NEOH and Grandview. Thus, Drake segregated the account into two accounts to reflect the separate contributions owed and payments received for NEOH and Grandview. Plaintiffs' Exhibit 4 only included credits for the payments allocated to NEOH. We do not believe that such an action is arbitrary. Moreover, as an independent auditor, Drake's job is to ensure that all amounts paid are properly credited to the appropriate account; changing a payment made by Grandview so that it is credited to Grandview's account certainly is not arbitrary where there is nothing to indicate that it should not have been applied to Grandview's account in the first place.

Based on the testimony of William F. Snyder,[6] defendants argue that these checks from Grandview represented payments made by Grandview on behalf of NEOH because Grandview was indebted to NEOH and that the checks were meant to be credited to NEOH. However, on cross-examination, Snyder admitted that there was nothing on the checks issued by Grandview which would indicate that the checks represented payments on the account of NEOH.[7] Moreover, Snyder admitted that no financial statements were prepared for either NEOH or Grandview in 1984 to demonstrate the basis on which the Grandview checks were issued. The only documentation of Grandview's indebtedness to NEOH was NEOH's own statements showing that it had advanced substantial sums to Grandview; there is no evidence indicating that NEOH or Grandview ever apprised the Funds of the indebtedness.

Defendants also argue that these payments cannot be attributed to Grandview because at the time the payments were made, Grandview did not even owe any contributions for 1984. However, the payments made by NEOH and Grandview appear to have been for deficiencies owed for the 1979–1983 period, as evidenced by the testimony of Melvin S. Schwarzwald and Plaintiffs' Exhibit 10, a June 5, 1984 letter agreement from Schwarzwald, counsel for the Funds, to Dick Wilson, general manager for Northfield Park, the track where the harness racing meets were conducted. The letter agreement, which Schwarzwald testified was the method proposed by the Funds to enable NEOH and Grandview to satisfy their past due obligations, was never executed. However, the fact that some of the payments the letter agreement proposed were made provides a basis for the Funds to credit the 1984 payments to Grandview even though it did not owe any contributions for 1984. Thus, we cannot say that the district court's determination of the amount of defendants' deficiency was clearly erroneous.

### D.

Finally, defendants argue that the district court abused its discretion in awarding attorneys' fees. As this action was brought pursuant to 29 U.S.C. § 1145, an award of reasonable attorneys' fees is mandated by 29 U.S.C. § 1132(g)(2)(D). *See Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir.) (stating that the remedies provided by 29 U.S.C. § 1132(g)(2), which include reasonable attorneys' fees, are mandatory), *cert. denied,* 502 U.S. 982, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991). "A district court's award or denial of attorney's fees is reviewed for abuse of discretion." *Cramblit v. Fikse,* 33 F.3d 633, 634 (6th Cir.1994) (per curiam) (citing *Perotti v. Seiter,* 935 F.2d 761, 763 (6th Cir.1991)). This standard applies to the review of mandatory attorneys' fee awards pursuant to 29 U.S.C. § 1132(g)(2). *McDonald v. Centra, Inc.,* 946 F.2d 1059, 1065–66 (4th Cir.1991), *cert. de-*

---

6. We note that Snyder, who was a partner in NEOH, was individually named as a defendant in this action.

7. In fact, the check stubs included no explanation other than the brief description "per attached," "Partial Payment," or "Payment on Account."

nied, —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1992); *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058 (2d Cir.1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990).

■ Defendants first argument is that the amount of the attorneys' fee award is "facially unreasonable" and that an attorneys' fee award of $70,185.95 is excessive where the underlying judgment is only $25,598.91. Appellants' Brief at 13–14. In the civil rights area, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages. In *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), a plurality of the Supreme Court upheld an attorneys' fee award under 42 U.S.C. § 1988 in the amount of $245,456.25, where the underlying damage award was only $33,350. *Id.* at 564–65, 581, 106 S.Ct. at 2689–90, 2697. The plurality refused "to adopt a strict rule that attorney's fees under § 1988 be proportionate to damages recovered." *Id.* at 581, 106 S.Ct. at 2697. Likewise, in affirming an award of attorneys' fees under 42 U.S.C. § 1988 that was more than five times the damages awarded, we stated that "the value of rights vindicated goes beyond the actual monetary award, and the amount of the actual award is not controlling." *McHenry v. Chadwick,* 896 F.2d 184, 189 (6th Cir.1990).

■ A similar rule has also been adopted in the ERISA setting. In *Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.,* 911 F.2d 1347 (9th Cir.1990), a trust sued an employer to recover allegedly delinquent contributions. *Id.* at 1350. The employer requested that the Ninth Circuit "develop a new 'de minimus' rule to bar litigation where only a few hours trust contribution is owing" and consequently, reverse the district court's award of attorney's fees to the trust. *Id.* at 1355. The court recognized that "[t]he recovery for attorney's fees, audit costs, inter-

est, and liquidated damages far exceeded the actual recovery." *Id.* Nevertheless, it rejected the argument, reasoning that it was "without authority" to establish such a rule because "Congress saw fit to impose on trust funds a statutory and fiduciary duty to collect contributions that are owed under ERISA, and to mandate that the courts grant them attorney's fees whenever they prevail." *Id.* (citations omitted). *See also Maryland Elec. Indus. Health Fund v. Triangle Sign & Serv. Div. of Lok–Tite Indus., Inc.,* 814 F.Supp. 15, 16–17 (D. Md.1993).

Based on the reasoning of the Ninth Circuit and in light of the expressed intent of Congress, we also adopt the rule that in ERISA cases, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages.[8] However, the award of attorneys' fees must be reasonable as determined under the "lodestar" approach.

■ Defendants further argue that in determining the fees to be awarded, the district court substituted the Funds' lump sum figure for the "lodestar" approach mandated by the Supreme Court. It is well settled that the "lodestar" approach is the proper method for determining the amount of reasonable attorneys' fees. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) (citing *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973)), *rev'd,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). In applying the lodestar approach, "[t]he most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). There is a "strong presumption" that this lodestar figure represents a reasonable fee.

---

**8.** Relying on the authority of *Lipsett v. Blanco,* 975 F.2d 934 (1st Cir.1992) (stating that an attorneys' fee award may be larger than the award of money damages where the defendant followed a hard-nosed defense strategy), the Funds argue that the award of attorneys' fees was reasonable in light of the obstructive tactics employed by defendants during the ensuing litigation. We do not believe it is necessary to reach this argument because we have already determined that based on the policy of the ERISA fee-shifting provision, the amount of the fee award may exceed the amount of money damages.

*Delaware Valley,* 478 U.S. at 565, 106 S.Ct. at 3098; *see also Roland v. Johnson,* No. 91–1460, 1992 WL 214441, at *2, 1992 U.S.App. LEXIS 22047, at *4–5 (6th Cir. Sept. 4, 1992). However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward...." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940.

▬ The Funds requested attorneys' fees in the amount of $99,329.99. NEOH complains that "[i]nstead of first making a determination as to what would constitute reasonable hours and reasonable rates the District Court uses the self-serving lump sum figure supplied by the plaintiff and then makes adjustments to that number based on the written objections of the defendant." Appellants' Brief at 15. However, the district court did not accept the Funds lump sum figure carte blanche; it followed the appropriate method by scrutinizing the hours and rates submitted. In its September 15, 1993 order awarding attorneys' fees, the district court first explained the lodestar test. It proceeded to review the documentation submitted by the Funds which itemized the hours expended and rates requested; in addition, it reviewed affidavits attesting to the prevailing market rates of compensation in the relevant legal market for similar work. The district court then considered defendants' challenges to the Funds' application for attorneys' fees and proceeded to disallow certain fees it deemed inappropriate by reducing the requested award by those amounts. In the end, the district court awarded $70,185.95, an amount it determined to be reasonable based on the underlying rates and hours. It makes no difference that the district court adopted the figure submitted by the Funds because it independently reviewed the rates and hours that comprised that figure for reasonableness. Because it employed the proper methodology, the district court did not abuse its discretion in making the award of attorneys' fees that it did.

▬ Defendants argue that the district court did not properly conduct a hearing to determine the reasonableness of the fee application submitted by the Funds. However, no hearing was requested by defendants. Moreover, the district court's failure to conduct an evidentiary hearing is not reversible error because a fee application may be decided without a hearing. *See Blum v. Witco Chem. Corp.,* 829 F.2d 367, 377 (3d Cir.1987); *Trucks, Inc. v. United States,* 763 F.2d 339, 341 (8th Cir.1985) (per curiam); *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331, 340 (4th Cir.1983); *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1330 (D.C.Cir.1982) (per curiam). A hearing is required only where the district court cannot fairly decide disputed questions of fact on the basis of affidavits and other documentation. *Blum,* 829 F.2d at 377; *National Ass'n of Concerned Veterans,* 675 F.2d at 1330; *Herrera v. Valentine,* 653 F.2d 1220, 1223 (8th Cir.1981); *Flying Tiger Line, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 715 F.Supp. 1284, 1286 n. 3 (D. Del.1989); *see also City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir.1974). Therefore, defendants claim that the district court abused its discretion in failing to conduct an evidentiary hearing is without merit.

▬ Defendants also state that "nothing was submitted in support of the number of hours worked." Appellants' Brief at 15. "Plaintiff has the burden of providing for the court's perusal a particularized billing record." *Perotti,* 935 F.2d at 764. However, "[a]ll that is necessary is 'evidence supporting the hours worked and rates claimed.'" *Granada Invs., Inc. v. DWG Corp.* 962 F.2d 1203, 1208 (6th Cir.1992) (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939). In this case, there was adequate documentation supporting the Funds' fee application. In support of their fee application, the Funds attached the affidavit of an attorney with the Funds' law firm, which included copies of the billing invoices for this entire action. Each entry is accompanied by a date, a description of the activity involved, the amount of time expended on such activity, and the total amount owed for that activity. In addition to the Funds' application for attorneys' fees, the Funds submitted a memorandum in further support of their application for attorneys'

fees, as well as a response to defendants' memorandum in further opposition to the Funds' application for attorneys' fees. Accordingly, the documentation in support of the Funds' application for attorneys' fees was adequate and the fee award shall stand.

■ Defendants argue that the order for attorney's fees imposes a disproportionate amount of the total fees on them. When the Funds initiated this action, they named as defendants NEOH, Grandview, and Painesville. The amount of attorneys' fees requested did not include any time attributable to the Painesville portion of the action. As between NEOH and Grandview, the Funds divided the attorneys' fees in a manner they believed was logical and proper: They allocated the attorneys' fees incurred prior to June 11, 1992, when Grandview settled out of court, based on the percentage of delinquent contributions owed by each entity to the Funds; all fees incurred after June 11, 1992, were allocated entirely to NEOH and its partners because they were the sole defendants from that date forward. We agree that this allocation appears to be logical, and thus the district court did not abuse its discretion by accepting it.

■ Finally, defendants make the conclusory and unsupported statement that the Funds "failed to exercise any 'billing judgment.'" Appellants' Brief at 16. Conclusory assertions "that plaintiff's counsel employed poor billing judgment ... do not suffice to establish that there was error." *Perotti,* 935 F.2d at 764. Accordingly, this argument is rejected. In summary, we conclude that the district court did not abuse its discretion in awarding attorneys' fees but that it did abuse its discretion in reducing the attorneys' fee award requested by the Funds.

### E.

■ In their cross-appeal, the Funds argue that the district court abused its discretion in that it applied an improper methodology in reducing the requested attorneys' fee award.[9] We agree. The Funds requested attorneys' fees in the amount of $99,329.99 and were subsequently awarded attorneys' fees in the amount of $70,185.95. This represents a reduction of $29,144.04.[10] As discussed above, "[a] district court's award or denial of attorney's fees is reviewed for abuse of discretion." *Cramblit v. Fikse,* 33 F.3d 633, 634 (6th Cir.1994) (per curiam) (citing *Perotti v. Seiter,* 935 F.2d 761, 763 (6th Cir.1991)).

As to $28,694.04 of the reduction, the Funds argue that the reduction amount represented attorneys' fees which were not entirely attributable to NEOH. However, the Funds argue that when they were disallowed, they were subtracted from an amount of attorneys' fees that reflected the amounts properly allocable to NEOH. Thus, the result was that the attorneys' fees awarded represented the total amount of attorneys' fees requested by the Funds, which included only amounts attributable to NEOH, reduced by amounts of attorneys' fees disallowed, which included amounts attributable to not only NEOH but Grandview as well. We agree. The district court should have allocated the disallowed amounts in the same manner in which it allocated the total attorneys' fees. We have reviewed the charts in the Funds' appellate brief that detail the modified reductions and believe that the Funds calculations are correct and accurately reflect the proper amounts of the reductions. Out of the $28,694.04 reduction to the Funds' attorneys' fee award, only $17,768.79 represents amounts that properly were allocable to NEOH. The remaining $10,925.25 represents amounts that were originally allocated to Grandview, so that when the amounts were disallowed, the reduction should not have been taken against the attorneys' fees allowed to the Funds. Accordingly, because that amount should be restored to the Funds' attorneys' fee award, we shall direct the district court to restore $10,925.25 of the $29,-

---

9. The Funds do not contest the substantive reductions made by the district court.

10. The reduction comprised the following amounts: $1465.89 for Eleventh Amendment research regarding the Ohio State Racing Commis-

sion; $1350.00 for preliminary injunction work; $2442.00 for a third dispositive motion ($450.00 of which was not actually billed to the Funds by their legal counsel); and $23,886.15 for preparation of the scheduled 1988 trial.

144.04 reduction in attorneys' fees made by the district court.

As to the remaining $450.00 of the reduction, the Funds argue that this amount represents attorneys' fees that were incurred but not actually charged to the Funds by their legal counsel. They claim that the amounts were not originally requested because the Funds' application for attorneys' fees included the billing invoices detailing fees actually charged instead of the computer printouts detailing all charges incurred. They state that two time entries for October 16, 1992, which appeared on the computer printouts and totaled $450.00, were not included in the billing invoices because they were incorrectly billed to the Funds. In comparing the October 16, 1992 entries on the actual billing invoices and the computer printouts, we find entries for only two amounts that are reflected on the computer printouts and not the billing invoices. The first entry is a $450.00 amount for the review of a motion for summary judgment. Because judgment in this trial was entered on September 30, 1992, we are hard-pressed to find that a $450.00 charge for the post-trial review of a motion for summary judgment was proper; perhaps that explains why it was incorrectly billed. The other entry is a $40.00 amount for the analysis of issues. Because this entry does not appear to be related to the increase in attorneys' fees request, it is not considered further. Accordingly, the Funds' request for an increase in attorneys' fees is denied insofar as it relates to the $450.00 amount.

### F.

In addition to the issues presented on appeal and cross-appeal, the Funds request additional relief in the form of attorneys' fees incurred for defending defendants' appeal and prosecuting their cross-appeal. Title 29, § 1132(g)(2) of the U.S.Code provides: "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 [delinquent contributions] of this title in which a judgment in favor of the plan is awarded, the court shall award the plan ... reasonable attorney's fees and costs of the action, to be paid by the defendant...." 29 U.S.C. § 1132(g)(2). There is nothing to indicate that this provision does not apply to attorneys' fees on appeal; in fact other circuits have affirmatively held that it does apply to attorneys' fees on appeal. See Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1356 (9th Cir.1990); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Serv. Co., 876 F.2d 852, 854 (10th Cir.1989) (per curiam); see also Nachwalter v. Christie, 805 F.2d 956, 961 (11th Cir.1986). We agree.

Defendants make two arguments in response. First, they argue that the Funds should not be awarded attorneys' fees for NEOH's appeal because it is not meritorious. This argument misses the point because attorneys' fees will be awarded only if the Funds prevail on the appeal, which necessarily requires that their appeal be meritorious. Second, they argue that the Funds should not be awarded attorneys' fees on the cross-appeal because the cross-appeal was within their discretion. This argument also misses the point because the discretionary nature of the cross-appeal does not change the fact that in actions under 29 U.S.C. § 1132(g)(2), the recovery of reasonable attorneys' fees is mandatory upon the award of a favorable judgment. Therefore, the Funds' request for reasonable attorneys' fees incurred on appeal and on cross-appeal shall be granted with the exception of those amounts relating to the requested $450.00 increase in attorneys' fees. The Funds' should submit to the district court an accounting of hours spent on this appeal and the cross-appeal, and the district court shall determine what attorneys' fees are reasonable.

### III.

For the reasons stated, the district court's judgment is AFFIRMED. In addition, the district court's award of attorneys' fees is AFFIRMED in part and REVERSED in part. Specifically, the district court's award of $70,185.95 in attorneys' fees to the Funds is AFFIRMED; the reduction to the amount of attorneys' fees requested by the Funds is REVERSED and REMANDED, and the district court is directed to restore $10,925.25

to the Funds' attorneys' fee award. Furthermore, the district court is directed to award reasonable attorneys' fees to the Funds in connection with this appeal in an amount to be determined by the district court.