NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0371n.06
No. 23-1824

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 27, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MARK M. MESSING, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| PROVIDENT LIFE & ACCIDENT INS. CO., | ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: CLAY, ROGERS, and KETHLEDGE, Circuit Judges.

CLAY, J., delivered the opinion of the court in which KETHLEDGE, J., joined in full, and ROGERS, J., joined in part and in the result. ROGERS, J. (pg. 13), delivered a separate concurring opinion.

**CLAY, Circuit Judge**. Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, "reasonable attorney's fees and costs" are available to either party at the district court's discretion, so long as that party achieved some success on the merits. *See id.* § 1132(g)(1). After successfully appealing the denial of his long-term disability benefits before this Court, Plaintiff Mark Messing sought attorneys' fees on remand. Despite his clear success in getting his monthly benefits reinstated, the district court denied his request. Although we disagree with the district court's holding that attorneys' fees were not warranted in this case, Messing nonetheless failed to submit sufficient evidence to show the reasonableness of his request for over $250,000 in attorneys' fees. For the reasons set forth below, this Court **AFFIRMS** the district court's order denying Plaintiff's request for attorneys' fees.

## I. BACKGROUND

### A. Factual Background

For nearly twenty years of his life, Messing worked as a full-time personal injury lawyer. In August 1985, Messing purchased a long-term disability ("LTD") insurance policy from Defendant Provident Life and Accident Insurance Company. The terms of Messing's policy provide for lifetime benefits for disability due to sickness starting before the age of 60. Specifically, if Messing was deemed unable to perform the substantial and material duties of his occupation, the policy would provide him with monthly payments of $3,080 for life.

After struggling with depression for several years, Messing was admitted to the hospital for his depression in January 1997. Although Messing attempted to return to work following his hospitalization, his depression continued to significantly affect his daily life, and he never returned to full-time capacity. At the time, Messing was approximately 43 years old. In March 1998, Messing filed a claim with Provident, explaining that his severe depression and psychiatric condition prohibited him from working as an attorney. Provident approved Messing's claim. However, since this initial approval, Messing has faced a consistent uphill battle to receive the payouts to which he is entitled under the policy that he purchased.

Indeed, mere months after Provident's approval of Messing's claim, Provident reversed course and terminated Messing's benefits, prompting Messing to bring suit in federal court. After the district court ruled that it would review the language and application of the policy *de novo*, instead of deferring to Provident's benefits determination, Provident quickly agreed to a settlement with Messing and resumed monthly payments. Then, in 2007 and 2011, Provident offered lump sum settlements to Messing, which would have allowed Provident to terminate Messing's monthly

benefit payments by paying a mere percentage of the present total value of Messing's policy. Messing declined these offers.

Meanwhile, without the extreme stress of his prior occupation as a trial attorney, Messing's symptoms related to his chronic depression began to improve. In 2012, Messing was able to stop taking his depression medicine but continued to regularly attend therapy. Six years later, without any evidence that Messing's disability status had changed, Provident initiated a full review of Messing's restrictions and limitations. Senior Disability Specialist, Jennifer Crowley, requested updated records from Messing's treating psychiatrist, Dr. Laura Franseen. Provident's in-house specialist, Dr. Alex Ursprung, then reviewed Dr. Franseen's report and noted that it was unclear whether Messing could return to work. Provident also hired an independent consultant to fly in, Dr. Craig Lemmen, who conducted a lengthy interview with Messing and concluded that "[t]here [was] no objective evidence that [Messing] would not be able to practice as an attorney, should he desire to do so." Lemmen Rep., R. 38-15, Page ID #2494. Based on its spontaneous investigation, Provident determined that Messing was "in remission" and accordingly terminated Messing's payments on October 26, 2018. Although Messing appealed and provided significant competing evidence that clearly indicated he could not return to performing the substantial duties of his occupation as a trial attorney, Provident's appeals division affirmed the termination of Messing's benefits.

## B. Procedural History

In April 2020, Messing brought suit in district court pursuant to ERISA, seeking the recovery of withheld benefits and the reinstatement of monthly payments. During the pendency of this litigation, Provident learned that Messing had performed a handful of legal services between

3

1999 and 2013. Based on this information, Provident brought a counterclaim seeking to recover overpaid benefits pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

The district court affirmed the termination of Messing's benefits, holding that the weight of the evidence in the administrative record supported the conclusion that Messing was no longer disabled. In addition, the district court granted Messing summary judgment on Provident's counterclaim, concluding that Provident could not show that it had been induced into making payments it otherwise would not have made.

Both parties appealed, and we affirmed the district court's judgment disposing of Provident's counterclaim. *See Messing v. Provident Life & Accident Ins. Co.*, 48 F.4th 670, 686 (6th Cir. 2022). However, we reversed the district court's determination that Provident properly terminated Messing's benefits. *Id.* at 682. Applying *de novo* review, we determined that the preponderance of the evidence showed that Messing remained unable to return to work as an attorney. *Id.* at 679–82. Specifically, only Messing's doctor, Dr. Callaghan, directly addressed the question of whether Messing could return to work, and "[h]e squarely stated Messing could not." *Id.* at 680.

Following Messing's success on appeal and reinstatement of benefits, he sought to recover his attorneys' fees and costs in district court. Despite Messing's clear victory in this litigation, the district court held that Provident was not sufficiently "culpable" to warrant an award of attorneys' fees in Messing's favor. The court highlighted the purported closeness of the case, explaining that both parties' positions had merit. Accordingly, the district court declined to grant attorneys' fees to Messing. As an alternate holding, the district court held that, based on the limited evidence that Messing submitted in support of his fees request, the court could not determine whether his requested amount was reasonable. Specifically, Messing refused to file itemized billing invoices,

and instead "filed affidavits which simply attest to the total number of hours worked on by each attorney or paralegal during this multi-stage litigation." Order, R. 78, Page ID #3570 n.1. Messing timely appealed the denial of attorneys' fees and asks this Court to reverse.

## II. DISCUSSION

### A. Standard of Review

We review the district court's disposition of an attorneys' fee motion for an abuse of discretion. *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). Although this standard is highly deferential, "to the extent that an exercise of discretion inherently includes subsidiary legal determinations, those subsidiary legal determinations are reviewed de novo." *Guest-Marcotte v. Life Ins. Co. of N.A.*, 768 F. App'x 357, 361 (6th Cir. 2019). We may only reverse the district court's decision where the court "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Imwalle v. Reliance Med. Prods, Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (quoting *Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004)).

### B. Analysis

To recover attorneys' fees under ERISA's fee-shifting statute, a fee claimant must show "some degree of success on the merits," as well as her "entitlement to attorney's fees." *Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 338 (6th Cir. 2013). The district court properly recognized that Messing succeeded on the merits by achieving reinstatement of his long-term disability benefits and an award of the improperly withheld payments. After concluding that Messing met this threshold requirement, the district court nonetheless determined that Messing was not entitled to recover his attorneys' fees under ERISA by weighing the five "*King* factors," which are:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of

an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). "No single factor is determinative," and the district court should consider each factor before exercising its discretion. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642–43 (6th Cir. 2006). In this case, the district court determined that Provident did not act with a sufficient degree of culpability, that Messing did not seek to resolve a significant legal question regarding ERISA, and that both parties' positions had merit. Finding that Messing had not made a strong showing on the majority of the *King* factors, the district court declined to award Messing attorneys' fees. We disagree with this conclusion.

Contrary to the district court's analysis, factors one, two, three, and five clearly favor an award of attorneys' fees.[1] In making its ultimate determination regarding the *King* factors, the district court largely pinned its analysis on the view that Provident did not engage in any culpable conduct or bad faith behavior. In fact, the court's determination that Provident was not highly culpable permeated its evaluation of nearly every single *King* factor. *See Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377–78 (6th Cir. 2009) (noting that whether a party is culpable or acts in bad faith can affect the first, third, and fifth factors of the *King* test). In contrast to the district court's conclusion, we view Provident's repeated attempts to rid itself of its obligations to Messing as evidence of a highly culpable course of conduct.

---

[1] Both parties agree that Provident is capable of satisfying an award of attorneys' fees in this case, meaning that the second *King* factor favors Messing.

First and foremost, without any new information or any legitimate explanation, Provident suddenly decided to closely scrutinize and re-evaluate Messing's eligibility under his benefits plan after nearly 20 years of making payments. To compound this seemingly culpable conduct, Provident then supposedly could not find a qualified psychiatrist in the Traverse City, Michigan area and instead flew in Dr. Lemmen from Ann Arbor to conduct a psychological assessment in a hotel conference room. Provident then made its decision to terminate benefits based on Dr. Lemmen's report and without a shred of affirmative evidence that Messing could return to work; indeed, Provident neglected to ask Dr. Lemmen to even specifically address whether Messing could perform the substantial duties of his job as a trial attorney. *Cf. Messing*, 48 F.4th at 680 (finding that Messing should prevail where Provident's retained doctor "couched his conclusion in a double negative—that there was no evidence that Messing could not return to work"). In fact, Dr. Lemmen's report lacks even basic recognition of what the substantial duties of a trial attorney are. "Where a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acts improperly in denying benefits, we have found that attorney fees are appropriate." *Majestic Star Casino*, 581 F.3d at 377. By suddenly reversing course after years of payments, and by failing to ask its retained psychiatrists to squarely address whether Messing could return to work and perform the substantial duties of his former job as a personal injury attorney, Provident acted with the requisite culpability to justify an award of attorneys' fees in Messing's favor. *Cf. Moon*, 461 F.3d at 643–44 (noting that a defendant is culpable if it selectively reviewed the medical record or relied on incompetent or biased medical evidence); *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004) (holding that factors one, two, and five favored an award of attorneys' fees where insurance company denied plaintiff's claim "based on a theory that lacked

legitimate foundation" and then "sought to defend this theory with reference to isolated snippets from the record").

Despite our view that Messing was entitled to his attorneys' fees based on the *King* factors, we cannot say that the district court abused its discretion in alternatively holding that Messing failed to carry his burden of showing that his requested fees and costs were reasonable. To determine the amount of reasonable attorneys' fees, courts typically apply the "lodestar" approach, which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Using the lodestar approach, the burden is upon the party seeking fees to proffer evidence showing that: (1) the hours expended on the ligation were reasonable, and (2) the rates charged were reasonable. *Hensley*, 461 U.S. at 433; *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020). Although this Court has not mandated "a particular form of proof for considering the reasonableness of legal fees," the moving party must submit at least some form of "evidence supporting the hours worked and rates claimed." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (quoting *Hensley*, 461 U.S. at 433)); *see also Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007) ("To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work.").

Although Messing has carried half of his burden by showing that his attorneys charged reasonable rates based on the prevailing market rate in the relevant community,[2] Messing declined

---

[2] Provident does not challenge that Messing's attorneys' fee *rates* are reasonable, but rather solely argues that Messing has not submitted any evidence to show that the attorneys' *hours expended* were reasonable.

to submit any evidence tending to prove that the hours worked by his attorneys were reasonable. Parties seeking attorneys' fees frequently shoulder this burden by submitting itemized billing records. *See, e.g.*, *Hensley*, 461 U.S. at 437 (explaining that the fee applicant bears the burden of "maintain[ing] billing time records in a manner that will enable a reviewing court to identify distinct claims"); *Imwalle*, 515 F.3d at 552 (explaining that, to award attorneys' fees, "the district court must conclude that the party seeking the award has sufficiently documented its claim" with "billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case" (citations omitted)); *Mich. Laborers' Pension Fund v. Envir. Specialty Servs., Inc.*, No. 2:19-cv-12146, 2020 WL 1539336, at \*3 (E.D. Mich. Jan. 31, 2020) (noting that plaintiffs met their burden of showing that the time expended on their case was reasonable by submitting "contemporaneous time and billing records for their work"); *Trs. of Sheet Metal Workers Loc. 7 Zone 3 Health Fund v. Traverse Bay Roofing Co.*, No. 17-12573, 2019 WL 1474023, at \*2 (E.D. Mich. Mar. 18, 2019) ("It is incumbent upon the party requesting a fee award to . . . document the appropriate hours expended and hourly rates.").

Instead of submitting these types of records, Messing's attorneys submitted three affidavits that summarily stated the hours that they had worked. For example, Messing's principal attorney claimed—without accompanying support—that he "personally worked more than 720 hours to date in representing Mr. Messing in the 3 stages of this representation and litigation," and that his senior associate attorney "worked more than 162 hours in assisting" him. Pl.'s Br. in Support of Att'y Fees, R. 65-6, Page ID #3462. In its brief in opposition, Provident argued that Messing's request for fees should be denied, pointing out that Messing failed to support his attorneys' fee request with contemporaneous time records or any other evidence. With the benefit of reviewing Provident's arguments, Messing was afforded a second opportunity to advocate for attorneys' fees

after the district court granted him leave to submit a further reply brief. Yet Messing's attorneys *still* did not submit any evidence of their hours worked. Instead, Messing attempted to flip the burden onto Provident, arguing that Provident did not submit its own attorneys' fee affidavits and failed to raise any specific objections to the reasonableness of the time spent on this case. Specifically, Messing claimed that he was in possession of "extensive time records," but would only provide them if Provident provided evidence of its own. Not only was it Messing's burden to establish that his attorneys' fee request was reasonable, but Provident simply could not make a "specific" objection without any semblance of a breakdown as to the tasks performed and hours expended by Messing's attorneys. And, importantly, Provident has not sought to recover any of its own attorneys' fees, meaning that it was under no obligation to produce its own time records or affidavits stating as much.

In addition, Messing argued that Federal Rule of Civil Procedure 54(d)(2)(B)(iii) does not require billing time records at all and instead solely requires the movant to "estimate" the attorneys' fees sought. Reading Rule 54(d)(2)(B)(iii) in conjunction with Federal Rule of Civil Procedure 43(c), Messing further argued that issues related to attorneys' fees may be decided "on affidavits" alone. But Messing misunderstands these rules and the relevant case law surrounding attorneys' fees. Section 1132(g)(1) of ERISA does not automatically award all claimed attorneys' fees to the prevailing party; instead, either party can seek attorneys' fees and must prove its requested attorneys' fees are "*reasonable*." Although an attorney's affidavit—albeit usually with billing records attached—may be one way to show that the fee request is reasonable, the Federal Rules of Civil Procedure do not stand for the proposition that an attorney can baldly assert the total hours he or she worked on a case and expect the district court to accept this assertion as reasonable. *United Slate, Loc. 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)

(holding that, where the documentation related to the hours reasonably expended on the litigation is inadequate, "the district court would do violence to its judicial obligations were it to accept the amounts claimed at their value"). Instead, attorneys must submit evidence—which *may* validly include affidavits—that enables a district court to evaluate the amount of time the attorney devoted to each task, approving or reducing an attorneys' fee request as it deems appropriate. *Id.* at 502 n.2 ("The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the . . . litigation."); *Gonter*, 510 F.3d at 617.

Finally, Messing's attorneys argued that they made a $110,665 voluntary reduction in the fee request to promote judicial economy. Based on this large reduction, Messing's attorneys claim that the total fees sought of approximately $252,000 was even less than the reasonable lodestar calculation and therefore should be awarded without the need for itemized billing records. However, this purported equitable reduction still did not allow Provident to challenge any specific aspect of Messing's application for attorneys' fees, nor did it allow the district court to scrutinize the hours submitted for each task. For example, Provident could not challenge any particular time entry as excessive, the vagueness of any time entries, or the necessity of any particular time entry. *Cf. Hensley*, 461 U.S. at 434 (noting that the district court should exclude hours that were not "reasonably expended," which includes fee request hours that are "excessive, redundant, or otherwise unnecessary").

Overall, Messing's attorneys cannot point to a single case that supports their strategy of merely stating the total number of hours that they worked in an affidavit without submitting any supporting evidence. To the contrary, each of Messing's citations on appeal that pertain to a party seeking attorneys' fees actually involve the submission of itemized billing records. *See, e.g.*,

11

*Grandview Raceway*, 46 F.3d at 1402 (noting that plaintiff submitted—in addition to other evidence—"billing invoices for [the] entire action," in which "[e]ach entry [was] accompanied by a date, a description of the activity involved, the amount of time expended on such activity, and the total amount owed for that activity"); *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 378 (3d Cir. 1987) ("In the case at bar, several detailed affidavits describing counsel's labors were filed with the court, listing the time spent on each matter and its relation to the case."). For these reasons, the district court did not err by determining that Messing's conclusory affidavits were insufficient. Without any information as to whether the large number of hours expended on Messing's ERISA case was "reasonable," and after Messing was afforded multiple opportunities to submit evidence to this effect, we decline to compel the district court to provide Messing with yet another opportunity.

## III. CONCLUSION

The district court should have determined that Messing was, at the very least, entitled to recover his attorneys' fees after his complete success on the merits in his prior appeal. Provident abruptly and unexpectedly decided to launch an investigation into Messing's depression diagnosis and then based its ultimate determination on the report of a psychologist who did not directly opine on whether Messing could perform the substantial duties of his prior work as an attorney. Although this culpable course of conduct could warrant an award of attorneys' fees in Messing's favor, Messing has repeatedly failed to submit evidence of his attorneys' hours worked. Without some evidence supporting his attorneys' assertions as to the hours they purportedly worked, the district court could not determine whether his request for fees was "reasonable," as required by 29 U.S.C. § 1132(g)(1). Based upon the foregoing reasoning, the Court **AFFIRMS** the judgment of the district court denying Plaintiff's request for attorneys' fees.

12

**ROGERS, Circuit Judge, concurring in part and in the result.** I concur in the affirmance of the order denying attorneys' fees, given Messing's failure below to carry his burden of showing that his requested fees were reasonable, as explained in the last six paragraphs of Part II.B of the majority's thoughtful opinion. For two reasons, however, I would not rule that the district court erred in its preceding ruling with respect to the five legally relevant factors laid out in *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985), and *Sofco Erectors, Inc., v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 433 (6th Cir. 2021). Accordingly, I do not join that part of the majority opinion.

First, it is rarely advisable for us to rule on issues that do not affect whether to affirm or reverse. See, generally, Pierre Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249 (2006). Here, based on the reasoning of the latter part of the majority opinion, Messing cannot recover attorneys' fees regardless of whether or not he met the standard for attorneys' fees under the five-part test.

Second, in any event it does not appear that the district court abused its discretion with respect to the weighing of the relevant five factors. Although our previous opinion reversing the district court's merits determination properly employed de novo review, the parties and the district court all agree that the district court's rejection of attorneys' fees at this stage is subject to the deferential abuse-of-discretion scope of review. Here, the district court applied the correct legal test, and its opinion does not appear to have made any clearly erroneous factual determinations. Even if on a less deferential scope of review we might weigh the five factors to support fees in this case, it is very hard to conclude that the district court abused its discretion in weighing those factors, in light of the district court's thoughtful and extensive analysis, *see Messing v. Provident Life & Accident Ins. Co.*, No. 1:20-c-351, 2023 WL 5497946 *3-8 (W.D. Mich., Aug. 25, 2023).