Joan **HEFFERNAN**, Plaintiff–Appellee,

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA**, Defendant–Appellant.

No. 02–3412.

United States Court of Appeals, Sixth Circuit.

June 11, 2004.

William H. Blessing, Law Offices of William H. Blessing, Cincinnati, OH, for Plaintiff–Appellee.

Jack F. Fuchs, Thompson Hine, Cincinnati, OH, for Defendant–Appellant.

Before GUY and DAUGHTREY, Circuit Judges, and LAWSON, District Judge.*

LAWSON, District Judge.

The plaintiff, Joan Heffernan, is a former litigation attorney who participated in an employee benefit plan provided by her former law firm. The parties agree that the plan constitutes an "employee welfare benefit plan" governed by the Employee Retirement Income Security Act (ERISA). See 29 U.S.C. § 1002(1)(A), et seq. Among the plan's benefits afforded to Heffernan was a long-term disability insurance policy that provided monthly payments if a sickness or injury prevented her from performing the regular duties of her occupation. The policy was underwritten by the defendant, UNUM Life Insurance Company of America, which also administered the disability plan. Heffernan's employment at her law firm ended in November 1994, approximately three years after she gave birth to her first child, and six months later she applied for long-term disability benefits under the policy. UNUM denied her claim after a lengthy review process, and the district court found that UNUM's decision was arbitrary and capricious, ordered benefits paid, and awarded Heffernan attorney's fees. In this appeal UNUM argues that the district court's determination was wrong, that it erred in failing to view in UNUM's favor certain evidence in the administrative record, and that it abused its discretion in awarding attorney's fees. We find that the district court properly evaluated the administrative record in light of the policy language, arrived at the appropriate conclusion, and did not abuse its discretion in awarding attorney's fees. Therefore, we affirm.

I.

Heffernan began her legal career after law school graduation and a judicial clerkship in 1988 when she was hired as an attorney by the Cincinnati law firm of Taft, Stettinius & Hollister. She worked as an associate in the litigation department, concentrating on commercial litigation. She was a self-described "workaholic" who spent fifty to sixty hours per week on the job.

In late 1991, Heffernan gave birth to a child. She returned to work full time in March 1992 and continued working without incident for about one year. Sometime in mid–1993, Heffernan's motivation to work along with her billable hour production declined precipitously. She began to experience episodes that she described as "spells." J.A. at 420. Each spell lasted about a minute and occurred without warning. During these spells, Heffernan felt hot and lost the desire to speak and concentrate. After each spell, she returned to work but felt exhausted. Con-

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

cerned that these spells might be seizures, Heffernan sought medical attention.

Heffernan first consulted with her primary care physician, Dr. Robert Weber, in July 1993; he treated her with Prozac but reached no definitive diagnosis regarding her condition. She switched physicians in 1994, and her new doctor, R. Clifton Smith, M.D., examined her and referred her to a neurologist, Dr. Arthur Hughes. After performing a battery of tests, Dr. Hughes concluded that the spells were not seizures. Heffernan's CT scan revealed no obvious physical problems. In May 1994, Dr. Smith referred Heffernan to Dr. David Helm, a psychiatrist, who then became her treating physician, seeing her monthly.

Heffernan's health problems persisted and she left her employment with the Taft law firm on November 28, 1994. She applied for and received short-term disability benefits, which were paid by the law firm without dispute. Six months later, on May 26, 1995, Heffernan submitted her application to UNUM for long-term disability benefits. The Taft law firm administrator responded to UNUM's inquiry for claim verification by explaining that Heffernan had "performance issues" because of "health problems," she was not given assignments because she could not complete them, her job was "too stressful," and she could not even do administrative work because "she has trouble [with] concentration" and "would have difficulty [with] any responsibilities." J.A. at 458.

UNUM then set about the task of assembling medical information concerning Heffernan's ailments. It obtained signed authorization forms from Heffernan for her medical records. Apparently in response to UNUM's request, Dr. Helm informed UNUM in writing in June 1995 that Heffernan "has Atypical Depression 296.90." Although she was responding somewhat to treatment, "significant fatigue" and "social withdrawal" persisted. J.A. at 550–51. Dr. Helm wrote that Heffernan's condition contrasted sharply with her previous levels of "very competitive" functioning and that the "high powered" law firm work that she had done before "would not suit her." *Ibid.* Six months later, Dr. Helm updated his assessment, explaining that Heffernan's inability "to focus," "her impaired memory," and "her basic fatigue" damaged Heffernan's ability to function as an attorney. *Id.* at 474. In May 1996 he noted: "I do not feel that Mrs. Heffernan can function as a litigation attorney, or indeed I do not feel that she can function in her training as an attorney at all at this point." *Id.* at 288.

UNUM retained a private investigator to conduct covert surveillance of Heffernan's daily activities in August 1995. After reviewing the investigator's reports, UNUM personnel concluded that the plaintiff was "not very active." *Id.* at 516.

UNUM also sent Heffernan for an evaluation by a psychologist of its choosing, Robert Tureen, Ph.D. Dr. Tureen prepared a report on Heffernan's condition after two days of testing and examination in September 1995. He reported that Heffernan "has difficulty remembering names and events (both recent and distant)," "struggles at times for words," and also "suffers from severe fatigue." *Id.* at 363. From his testing, Dr. Tureen found that "she is not able to use effective coping skills to handle any significant stress and she feels quite vulnerable and fears being overwhelmed." *Id.* at 367. From a "diagnostic standpoint," Dr. Tureen concluded "that the patient does at this point essentially suffer from a depressive disorder. What the evidence suggests is that she probably experienced a major depression." *Ibid.* He stated that he was unable to recommend that she was capable of func-

tioning as a litigation attorney, with these words:

> This brings up the next point of whether or not [Heffernan] could function as a litigation attorney. At this time, it is not my opinion that she could function as a litigation attorney, at least as a lead attorney. I would think it would be more reasonable for her to consider either functioning in a non-litigation capacity, or possible in an advisory capacity in litigation situations or as she has suggested in a teaching situation. I do not think that this rules out her capacity to function as a litigation attorney again, but that may be eventually a matter of her desire in wishing to put herself back in that type of stressful work setting.

*Id.* at 374.

UNUM next contacted Karen Jaspers, one of its agents who operated a business in Massachusetts called "Options Associates, Inc.," to perform a "labor market survey." Jasper reviewed Heffernan's medical records and work history, obtained data from a Pennsylvania-based telemarketer called WorkSource that had placed telephone calls to certain businesses in Cincinnati, and concluded in a February 1996 report that "Ms. Heffernan is capable of performing her own occupation in an alternative and less stressful work environment" and that there "will be periodic employment opportunities available to her at a gainful level." *Id.* at 334.

On February 20, 1996, UNUM issued a letter denying Heffernan's claim for long-term disability benefits. The letter explained that UNUM viewed Heffernan's inability to do her work as job-specific rather than occupational. Relying heavily on the labor market survey, UNUM stated that it had considered Heffernan's limitations and concluded that "the occupation of Litigation Attorney could be conducted within the above restrictions and limita-

tions. Therefore, based on this information, we are unable to accept liability on your claim for benefits." *Id.* at 332–333.

Heffernan immediately requested the administrative record and sought administrative review of the denial of her claim. On May 20, 1996, she submitted reports from Dr. Chris Haynor, a neurologist; Dr. Shahrokh Javaheri, a pulmonologist; Dr. Henry Kenkel, a psychiatrist; and another letter from Dr. Helm. Dr. Haynor tested Heffernan for sleep apnea and, with Dr. Javajeri's assistance, administered a formal sleep study. He found that Heffernan was unable to achieve significant stage III or IV (deep) sleep "which may well be part of her problem with regard to daytime functioning." *Id.* at 267. He also concluded that although the sleep disorder "probably does not fully account for her symptoms," it "is a significant contributor." *Id.* at 485–86. Relying on this data, Dr. Kenkel opined that Heffernan suffered "from a neurologic disorder characterized by dysfunction of the reticular system of the brain." *Id.* at 483. That condition was the cause of disabling symptoms that included impaired ability to concentrate, memory problems, emotional instability, intellectual decline, and chronic sleep disorder. Dr. Kenkel rejected the suggestion that Heffernan's difficulty was the product of a subconscious conflict between her desire for high achievement as a lawyer and her wish to stay at home with her child. He concluded:

> [Heffernan] is not capable of working as an attorney because of cognitive deficiencies. These cognitive deficiencies are completely disabling with regard to the practice of law regardless of whether she works part-time or full-time and regardless of the type of practice she might try to engage.
>
> I believe that her condition is treatable, and that with proper treatment there is

a reasonable chance for full or almost full recovery to the point that she could resume full-time practice of law. My level of certainty in this regard is moderate; her condition is not one encompassed by a standard diagnostic association and therefore I cannot refer to standardized treatment approaches with associated prognostic expectations.

*Id.* at 295–96.

Dr. Helm's May 4, 1996 letter stated that he believed that Heffernan's fatigue was increasing and found that she could not function either as a litigation attorney or in any other law-related field.

UNUM representatives considered these submissions and found inconsistencies in the reports of Dr. Haynor (improvement in sleep), Dr. Kenkel (limited depression), and Dr. Helm (depression becoming worse), so the defendant referred the file to another of its physicians, Dr. Nancy Beecher. Dr. Beecher did not examine Ms. Heffernan but she reviewed her medical records and made the following finding:

> 45 y.o. attorney who ceased work 11/29/94 due to depression. This began after she RTW [returned to work] after the birth of her daughter in 1992. She said she felt split between being home with her daughter and wanting to be a high achiever at work. He [sic] work performance deteriorated and she left work 2 yrs later and has not returned. He [sic] psychiatrist, Dr. Helm, sees her monthly for medication only and states diagnosis as atypical depression, chronic fatigue and sleep disorder. Neuropsych testing in 9/95 showed no deficit and recommendation was for psychotherapy and possibly group therapy. I see no evidence that this occurred or that she improved functionally. Dr. Kenkel talks about abnormalities of the reticular system of the brain and this is the popular theory for the cause of CFS. However, there are no consistent test findings and it is unclear how this effects [sic] the complaint of fatigue and cognitive and physical functioning and we know her cognitive testing was WNL [within normal limits]. Over all this fits best with an atypical depression with sleep disorder and fatigue related to this and to role conflicts regarding being a mother and a professional person. Her symptoms do not appear to be severe and the letters from Dr. Hayner, Dr. Kenkel, and Dr. Helm do not add anything significant that would affect our prior conclusions.

*Id.* at 253.

On June 25, 1996, UNUM again denied Heffernan's claim. Heffernan sought further administrative review, and UNUM referred the case to its "Quality Review Section" to complete a review within sixty days. On October 30, 1996, UNUM informed Heffernan that it had requested additional information to aid its final determination. On February 28, 1997, Dr. Peter Mirkin, a psychiatrist and UNUM vice-president, conducted his own review of the file and concluded that Heffernan was not disabled. He believed that Heffernan chose to leave her job at the law firm, that she previously had worked despite the presence of symptoms of depression, and that Heffernan's treating physicians' opinions that she was disabled were not supported by the clinical data. As for Dr. Kenkel, Mirkin opined that his "anatomical description of the part of the claimant's brain that is supposedly dysfunctional, does not exist. There is no such part as 'the reticular system.'" *Id.* at 247. Mirkin dismissed Dr. Kenkel's report out-of-hand. He also suggested that none of Heffernan's examining physicians identified any objective evidence supporting a conclusion that she could not perform as a

litigation associate in a less stressful setting.

UNUM also apparently considered information that was attributed to attorney Robert Stachler, Heffernan's department head at the Taft law firm, who offered his opinion that Heffernan's claim was "bogus." According to a "broker," Stachler was to have said that Heffernan had claimed "she wanted to quit her job" and to have a "lifestyle change." *Id.* at 453. UNUM then interviewed Stachler. Although he did not confirm the earlier comments attributed to him, he did say that when he hired Heffernan, an individual had described her as someone who "liked to take advantage of situations." *Id.* at 448. He also told UNUM that Heffernan also was not feeling well for a time in 1989, and that she was having trouble working after her maternity leave had ended. *Id.* at 449.

UNUM ultimately affirmed its denial of Heffernan's claim on March 6, 1997. In its letter, UNUM concluded that "[a]n extensive review by our medical department found that none of Ms. Heffernan's examining physicians have been able to offer objective evidence that she could not do her job. . . . The documentation contained in the claim file supports that Ms. Heffernan's decision to stop working was a lifestyle choice." *Id.* at 240.

Heffernan filed a complaint in federal district court on June 10, 1997 under the authority of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."). She claimed that she was disabled from working as a litigation attorney as a result of a "neurologic disorder characterized by a dysfunction of the reticular system of her brain." She raised a dispute over the contents of the administrative record, and the district court granted discovery limited to that issue. The parties learned that UNUM had not received the complete records of Dr. Helm. UNUM filed a motion for judgment on the record, to which Heffernan responded with a cross-motion for judgment. The district court denied both motions without prejudice, subject to reconsideration following discovery. Heffernan deposed Dr. Mirkin and UNUM's claims administrator, Elizabeth Crane. The parties subsequently refiled cross-motions for summary judgment.

At a hearing on the matter, the lower court commented that it would not consider relevant the incomplete production of Dr. Helm's records, nor would it place significant weight on the opinion of Robert Stachler, Taft's litigation practice group leader. The district court subsequently granted judgment for Heffernan based upon its assessment that UNUM's denial of benefits was arbitrary and capricious. A clerk's error resulted in the entry of a judgment of dismissal, which was corrected after a previous notice of appeal had been filed and the case remanded. On remand, the district court also granted in part Heffernan's motion for attorney fees under 29 U.S.C. § 1132(g)(1). It did not allow fees and costs for legal work performed at the administrative review stage, however, UNUM's appeal followed.

II.

We review the district court's decision in an ERISA benefits denial case *de novo* and apply the same standard in our consideration of the plan administrator's decision as the district court. *Killian v. Healthsource Provident Administrators, Inc.,* 152 F.3d 514, 520 (6th Cir.1998). A district court's award of attorney's fees to a pre-

vailing claimant under ERISA is reviewed for an abuse of discretion. *Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 619–20 (6th Cir.1998).

The parties agree that the standard of review of the plan administrator's decision in this case is the arbitrary and capricious standard. This deferential review is appropriate when the ERISA plan at issue, as here, provides a clear grant of discretion to the plan administrator and the decision being appealed was made in compliance with plan procedures. *Sanford v. Harvard Indus., Inc.,* 262 F.3d 590, 595, 597 (6th Cir.2001). When applying this standard, the court must determine whether the administrator's decision was reasonable in light of the available evidence. Put another way, if there is a reasonable explanation for the administrator's decision in light of the plan's provisions, then the decision was not arbitrary and capricious. *Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir.2000). A decision reviewed according to this standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir.1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997).

"[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In such an action, the court generally considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. *Smith,* 129 F.3d at 863. The court's review thus is limited to the administrative record. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 618 (6th Cir.1998).

Under the terms of the plan in this case, Taft law firm employees who became "disabled" were entitled to monthly long-term disability payments when UNUM received satisfactory proof that an insured was disabled due to sickness or injury that required the regular attendance of a physician, following the expiration of a six-month elimination period. The plan defined "disabled" as follows:

[T]hat because of injury or sickness:

1. [the insured] cannot perform each of the material duties of [her] regular occupation; or

2. [the insured], while unable to perform all of the material duties of [the insured's] regular occupation on a full-time basis, are:

a. performing at least one of the material duties of [her] regular occupation or another occupation on a part-time or full-time basis; and

b. earning currently at least 20% less per month than [her] indexed pre-disability earnings due to that same sickness or injury.

Note: For attorneys, "regular occupation" means the specialty in the practice of law which [the insured] was practicing just prior to the date the disability started.

J.A. at 148.

UNUM argues that the district court erred in concluding that the benefit denial decision was arbitrary and capricious because it ignored the labor market survey that concluded Heffernan could perform her job as a litigator in a less stressful environment; the lower court ignored Robert Stachler's opinion that Heffernan's claim was bogus; it failed to account for the opinions of consulting doctors that Heffernan could perform her occupation in

**106**

a less stressful environment; the court should have deferred to Dr. Mirkin's conclusion that since Heffernan continued to do her work for three years after the supposed onset date of her disabling condition, she should not be considered disabled; and the district court should have given more weight to the adverse inference that should have been drawn from UNUM's receipt of incomplete records from Dr. Helm, the plaintiff's principal treating psychiatrist.

It is important to note at the outset that UNUM viewed litigation as a specialty within the practice of law and characterized Heffernan's occupation as "litigation attorney." Under the plan's plain language, therefore, Heffernan would be considered disabled if, due to sickness, she could not perform "each of the material duties" of a litigation attorney.

There is no dispute that Heffernan suffered from a "sickness;" as the district court correctly observed, each of the physicians who actually examined her, including her treaters and the physician to whom UNUM sent Heffernan for an examination, found that she suffered from depression to some degree. Neither Dr. Mirkin nor Dr. Beecher concluded that Heffernan was not depressed. Rather, the dispute arose from the conflict that emerged from the opinions of Heffernan's treating doctors plus Dr. Tureen that Heffernan's depression prevented her from performing her duties as a litigator, and UNUM's view that Heffernan's depression was stress-induced such that she could act as a litigator in a low-stress environment, or alternatively that her departure from her litigation position at the Taft law firm was a voluntary life-style choice. The district court found that UNUM's conclusions were not rational in light of the evidence in the administrative record and the plan provisions. We agree.

■ The conclusion that Heffernan could function as a litigation attorney in a low-stress environment was based in large measure on the labor market survey conducted by Options Associates, Inc. That piece of evidence, however, deserves little weight, and the district court properly concluded that it did not provide any basis for denying benefits. The study did not evaluate Heffernan's actual job description or requirements, because Taft never provided that information to UNUM; nor does the record contain an explanation of the study's conclusion that Heffernan could return to the labor force and make a $73,000 yearly salary since the study's drafters acknowledge that none of the polled participants would give out information relating to salary.

Moreover, there is no evidence that litigation can ever be conducted in a low-stress environment. There is nothing in the record that suggests that the atmosphere in the litigation department at Taft was unusually stressful or severe, or that employees there were exposed to more distress than one normally would encounter in the adversarial environment of a litigator. Litigation is an inherently stressful occupation, which is a concept that seems to be endorsed by all the witnesses in this case except the ones employed by UNUM. UNUM chose to describe the plaintiff's occupation not as "attorney," but as "litigation attorney." Thus, it must accept the notion that if Heffernan's psychological constitution makes her vulnerable to the distress inherent in a litigation practice, her resulting disability falls within the scope of coverage as defined in UNUM's policy. Remarking that an attorney might be able to function in a less stressful environment might be a critical observation if the occupation were defined more broadly. However, suggesting that a litigation

attorney who is prone to stress-induced mental illness might be able to function in an employment environment with less stress is akin to observing that a tightrope walker with acrophobia would do well to avoid high places. The mental status of both likely would improve in the friendlier environments, but finding work would be challenging.

UNUM's other theory upon which it denied liability—that it was Heffernan's desire for a life-style change and not her depression that drove her from the Taft law firm—is based primarily on the report by Dr. Mirkin. He was critical of the treating and examining physicians who found disability because he could not find supporting clinical data. Dr. Kenkel attributed Heffernan's disabling symptoms to a dysfunction of the reticular system of the brain. UNUM's own in-house doctors are conflicted on this point: Dr. Beecher characterized Dr. Kenkel's diagnosis as a "popular theory" for the cause of chronic fatigue syndrome, but Dr. Mirkin apparently is not aware that such an anatomical structure even exists. The district court did not err in finding that Dr. Mirkin's letter failed to provide substantial evidence in support of the benefit denial decision.

UNUM insists that the plan administrator was entitled to draw an inference adverse to Heffernan because of her failure to produce Dr. Helm's complete file. A claimant's refusal to provide all medical records requested by an ERISA plan administrator can be a ground for denying benefits, particularly if full disclosure and compliance with the plan's document requests was a condition precedent for the receipt of benefits, or the claimant's refusal is willful and results in prejudice to the plan administrator. *See, e.g., Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991); *Bali v. Blue Cross & Blue Shield Ass'n*, 683 F.Supp. 1220, 1222–24

(N.D.Ill.1988). However, UNUM's contention that Ms. Heffernan deliberately withheld any notes of Dr. Helm from the administrative record is unfounded and illogical. It appears that UNUM tendered numerous requests to Dr. Helm for his records, but the plaintiff was never notified that there was a deficiency with regard to Dr. Helm's records or that she was expected to procure the records and tender them to UNUM. Moreover, the records, which came to light during discovery in the lower court and consist of three letters from Dr. Helm dated November 4, 1994, February 3, 1995, and May 9, 1995, all provide clear support for Heffernan's claims. The November 4, 1994 record states that Heffernan "is not functioning at work," she was "having trouble with fatigue and concentration, her memory is poor," and that she had "not responded to medications." J.A. at 598. In the February 3, 1995, Dr. Helm diagnosed "Chronic Fatigue Syndrome along with Atypical Depression." Dr. Helm described Heffernan as "socially withdrawn," "indecisive, no motivation, and complains of memory impairment; both short term and long term. She feels that she has continued to be in a fog with much fatigue and looks tired and somewhat unkempt." *Id.* at 599. The May 5, 1995 letter reiterates the diagnosis of atypical depression and states: "She is no worse, perhaps a bit better in terms of her energy and interest. She is thinking about work in the fall. She has interviewed with Chase and didn't get the job but was happy with the interview process. She's still feeling periods of low energy, lethargy which does not seem medication related on the 100 mg Zoloft level as it was no [sic] the 150 level. She may be having cognitive impairments with memories due to Zoloft." *Id.* at 600. None of these records contradicts Dr. Helm's diagnosis or his opinion that mental illness was the cause of Heffernan's inability to per-

form all the functions of a litigation attorney. No adverse inference properly could have been drawn from their absence from the administrative record.

The district court did not err in discounting the evidence of attorney Robert Stachler's opinions. UNUM placed considerable reliance on the second-hand report of Stachler's view that Heffernan's claim was "bogus." That information was not confirmed when Stachler was interviewed, and the evidence was largely insubstantial in light of the lengthy record of medical opinions.

Nor did the district court err in failing to accept Dr. Merkin's viewpoint that since Heffernan worked during a period when medical professionals opined that she was suffering from mental illness, she could continue to do so. In *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975 (7th Cir. 1999), the court affirmed the denial of benefits to an attorney who succeeded at her job and failed to offer evidence that her condition worsened. However, the court aptly observed:

> We can imagine circumstances under which it *would* be unreasonable to demand proof of a change in condition. Some disabled people manage to work for months, if not years, only as a result of superhuman effort, which cannot be sustained. Sometimes work beyond one's limitations is essential to maintain one's standard of living, or is the result of an effort to disguise one's limitations from friends and coworkers. Reality eventually prevails, however, and limitations that have been present all along overtake even the most determined effort to keep working. We can imagine a lawyer trying to carry on, to defy her limitations, in order to avoid abandoning the profession in which so much of her human spirit and capital is invested.

*Id.* at 983. The record documents Heffernan's attempts to continue working through her depression. There is no record of success or performance during that period that approached her pre-morbid output. To infer that Heffernan's depression was inconsequential because she continued to work is not warranted and does not support a decision to deny benefits.

All of the examining and treating doctors found Heffernan to be disabled according to the policy's definition of disability. UNUM's rejoinder to those findings was not to offer substantial contrary evidence; UNUM merely disagreed with the conclusions of Drs. Weber, Smith, Hughes, Helm, Tureen, Kenkel, and Haynor. UNUM's own examining physician found Heffernan disabled within the meaning of the policy. UNUM's refusal to accept the unanimous conclusions of those doctors is not supported by record evidence. The district court correctly held that denying benefits under the circumstances presented by the administrative record in this case was arbitrary and capricious.

## III.

UNUM also challenges the district court's award of attorney's fees and costs. According to 29 U.S.C. § 1132(g)(1), "[i]n any action under this [statute] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In exercising this discretion, a trial court should consider the following factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and

beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dept. of Labor v. King,* 775 F.2d 666, 669–70 (6th Cir.1985) (per curiam).

Here, factors one, two, and five favor an award of attorney's fees. An arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith. However, in this case, UNUM ignored overwhelming evidence of Ms. Heffernan's disability, and, instead denied her claim based on a theory that lacked legitimate foundation. UNUM then sought to defend this theory with reference to isolated snippets from the record. UNUM will be able to satisfy an award of fees. After balancing these factors it is plain that the lower court did not abuse its discretion by awarding the plaintiff her attorney's fees and costs.

UNUM also claims that even if an award of fees is found to be appropriate, the court should still conclude that the district court abused its discretion by awarding fees for forty hours the plaintiff's counsel spent conducting discovery, which the lower court did not consider in rendering its decision. However, this court's precedent allows a lower court to consider evidence outside of the administrative record in an ERISA case if the evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process being afforded by the administrator or alleged bias on its part. *Wilkins,* 150 F.3d at 620. The lower court properly authorized discovery in order to explore a procedural challenge. There is no requirement that discovery generate actual admissible evidence in order to qualify for repayment under 29 U.S.C. § 1132(g)(1). Attorney's fees for this effort were properly included in the lower court's award.

## IV.

The district court properly concluded that the defendant's decision to deny benefits to Joan Heffernan was an abuse of discretion. The district court properly exercised its own discretion when it awarded attorney's fees to Hefferan. Accordingly, the judgment of the district court is AFFIRMED.