[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 19, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-10616

_____

D. C. Docket No. 03-00692-CV-RLV-1

STEVEN A. BLASKE,

                                                        Plaintiff-Appellant,

                        versus

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 19, 2006)**

Before EDMONDSON, Chief Judge, and BLACK, and FAY, Circuit Judges.

PER CURIAM:

This case concerns an order denying plaintiff's long term insurance disability benefits under policies issued by defendant-appellee, Provident Life and Accident Insurance Company (hereafter referred to as "Provident"). The district court granted summary judgment in favor of Provident, holding that as a matter of law, the plaintiff failed to timely file notice of his disability claim, and his injuries did not fall into the definition of "Totally Disabled," as defined in the Provident policies. We reverse.

## I. Factual Background

In 1981, Steven A. Blaske (hereafter referred to as "Blaske") started his employment as in-house counsel for Unisys Corporation. After a couple of years of employment, Provident issued four disability insurance policies to Blaske. Each of these policies provided lifetime benefits in the event that Blaske became "Totally or Residually Disabled" due to sickness or injury before age 60.[1]

In March 2000, Blaske injured his back while lifting boxes at his home. Over the next couple of months Blaske continued to work at Unisys, but was in

---

[1]The policies defined the following terms:

*Total Disability* or *Totally Disabled* means that due to injuries or sickness, you are not able to perform the substantial and material duties of your occupation.

*Residual Disability* or *Residually Disabled* means due to injuries or sickness, you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business for as much time as it would normally take you.

2

considerable pain. On May 8, 2000, Blaske consulted with Dr. Christopher

Edwards, a board certified orthopedic surgeon who specializes in disorders of the

spine. On September 28, 2000, after four months of unsuccessful treatment, Blaske

decided to undergo back surgery. Due to the back surgery, Blaske went on medical

leave from September 19, 2000, through February 28, 2001.

According to the record, in late 2000, Unisys announced that it was offering

early retirement to 1,500 employees, and that another 1,500 employees would be

laid off. Before returning to work on March 1, 2001, Blaske testified that he

received "hints" that he might be one of the employees that would not continue to

work for Unisys.[2] In January 2001, in preparation of possibly being laid off as in-

house counsel for Unisys, Blaske took and passed the Georgia Real Estate

Commission test. Also, in January 2001, Blaske sent Provident a claim form dated

October 16, 2000, in which Blaske reported his back injury for the purposes of

receiving Non-Disabling Injury benefits under one of the policies provided by

Provident. Provident paid the Non-Disabling Injury benefits in February 2001.

On March 1, 2001, Blaske returned to work, with no apparent medical

restrictions, but with the general advice "to be careful and not to do more than he

---

[2] According to Blaske's deposition he admitted that, "I might be viewed as damaged goods, as somebody who was expensive and could not be relied upon health-wise." pg.50-51.

felt comfortable doing." As Blaske predicted, on the same day he returned to work, Unisys proposed a separation of employment agreement. On March 8, 2001, Blaske finalized his separation agreement. Pursuant to the terms of the agreement, Blaske remained on the pay-roll through July 16, 2001, but as of March 8, he was no longer to report for work at Unisys.[3]

After being terminated by Unisys, Blaske worked in Atlanta as a real estate agent. During part of April, May and June 2001, Blaske worked part time at Re/Max Greater Atlanta. In addition, starting in June 2001, through the spring of 2003, Blaske worked full-time as a realtor with Coldwell Banker.

Since January 2001, when Blaske sent Provident the Non-Disabling form, there had been no further written communication between these parties.[4] On November 27, 2001, Provident received a disability claim signed by Blaske, along with an Attending Physician Statement signed by Dr. Edwards claiming "Total Disability." On December 6, 2001, Ms. Pons conducted a telephone interview with Blaske, during which time she informed him that his disability claim was filed

---

[3] According to the record, Blaske allegedly did not try to work a full day to see if he was "Totally Disabled." Instead, he utilized the week of March 1 to negotiate a separation agreement, and "wrap things up."

[4] Blaske testified that he had regular telephone conversations about his situation and physical condition with Ms. Louise Pons, a Customer Care Specialist at Provident.

untimely.[5] Nevertheless, during January 2002, Provident requested Blaske's medical records in order to determine whether Blaske fit the definition of "Totally Disabled." Included therein was a medical evaluation by a Dr. Joseph R. Thomas, a board certified orthopedic surgeon. Dr. Thomas concluded that Blaske could still perform as an attorney, that he made a satisfactory recovery from his surgery, and that there was no evidence of any significant disc herniation or neural encroachment. Provident then notified Blaske that it was exercising its right to obtain an independent medical examination ("IME"). Dr. Tapan K. Daftari conducted the IME and concluded that Blaske had persistent nerve root problems, and could no longer perform all of his occupational responsibilities. However, Dr. Daftari concluded Blaske could still work 3-4 hours per day with frequent breaks.

According to Blaske's deposition, he had the following responsibilities while employed at Unisys: appearing in court, giving opening and closing statements, cross-examining witnesses, attending administrative hearings and appearing at depositions and mediations. Blaske also contended that his normal work day was 12-14 hours per day, and that he frequently had to travel as the in-house litigator for Unisys.

---

[5] "Written notice of a claim must be given within 20 days after a covered loss starts or as soon as reasonably possible." (Emphasis added)

On April 19, 2002, Provident notified Blaske that his claim for "Total Disability" benefits was denied, because he did not meet the definition of "Totally Disabled," as defined in the policy. Provident did suggest that he might be eligible for "Residual Disability" benefits, and requested several financial documents from Blaske. According to the record, Blaske never received any "Residual Disability" benefits.

We disagree with the lower court's decision that no genuine issue of material fact exists with regard to both notice and disability benefits.

## II. Standard of Review

We review rulings on motions for summary judgment *de novo* by applying the same legal standards used by the district court. See Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, 348 F.3d 1278, 1281 (11th Cir. 2003).

## III. Analysis

Blaske contends that the district court erred in granting Provident's motion for summary judgment. Blaske argues that a genuine issue of material fact exists regarding whether his delay in providing notice was reasonable. According to the policies, Blaske was required to provide written notice of a claim "within 20 days

after a covered loss starts <u>or</u> as soon as reasonably possible." (Emphasis added)

Under Georgia law, "timely notice to the insured of a claim or occurrence is a

condition precedent to the insurer's duty to defend or pay." <u>Equitable Life</u>

<u>Assurance Soc'y v. Studenic</u>, 77 F.3d 412, 415 (11th Cir. 1996) (citing <u>Ins. Co. of</u>

<u>N. Am. v. Waldroup</u>, 462 F. Supp. 161, 162 (M.D. Ga. 1978)).

According to the record, it is undisputed that Blaske failed to provide

written notice within 20 days of the commencement of the alleged disability. It is

also undisputed that Blaske did not file his claim for "Total Disability" until

November 2001. However, Blaske contends that he provided notice as soon as

reasonably possible. Geogia courts have held that such a notice requirement is met

as long as notice is given "with reasonable diligence and within a reasonable

length of time in view of the attending circumstances of each particular case."

<u>Bituminous Casualty Corp. v. J.B. Forrest & Sons, Inc.</u>, 132 Ga. App. 714, 719,

209 S.E.2d 6 (1979).

Blaske contends that his delay in providing notice to Provident was

reasonable because, even though his disability actually began in September 2000,

he did not learn that he was "Totally Disabled" under the terms of the policies,

until October 31, 2001, when Dr. Edwards, his treating physician, informed him

that he could no longer work in his occupation as a litigation attorney. At the time

7

of the surgery both Blaske and Dr. Edwards believed that the procedure would be successful, and that Blaske would be able to perform his substantial and material responsibilities as a litigator.

However, as mentioned above, Blaske contends that after his surgery, he was unable to return to work and perform his substantial and material duties as a litigator. According to the record, on October 31, 2001, Blaske had a scheduled appointment with Dr. Edwards to discuss his condition. Blaske contends that during this appointment he learned for the first time that his condition would not improve, and that he was "Totally Disabled" as defined in the terms of the policies. Within two days of the October 31 appointment, Blaske contacted Ms. Pons and advised her that he would be making a claim for "Total Disability." Blaske contends that the notice requirement should have started after October 2001, because that is when, for the first time, he was notified that he was "Totally Disabled" as defined in the terms of the policies.

Provident disagrees, and argues that even though Blaske was told by Dr. Edwards in October 2001 that he was "Totally Disabled," as defined in the policies, Blaske should have been aware of his disabilities when he returned to work on March 1, 2001.

8

"As is true generally with regards to issues relating to reasonableness and sufficiency of compliance with stated conditions, questions of the adequacy of the notice and the merit of [the insured's] claim of justification are ones of fact which must be resolved by a jury...." State Farm Auto. Ins. Co., v. Sloan, 150 Ga. App. 464, 466, 258 S.E.2d 146, 148 (1979).

Although it is unclear if Blaske will prevail on this contention, it certainly raises a genuine issue of material fact, which should not have been extinguished as a matter of law. See Studenic, 77 F.3d at 415; see also Norfolk Fire Ins. Co. v. Cumbaa, 128 Ga. App. 196, 196 S.E.2d 176 (1973) (determining the reasonableness of a 19 month delay should be submitted to a jury). We find that the question of whether the notice was given as soon as reasonably possible should be decided by a jury, and not as a matter of law.

Next, Provident argues in the alternative, that even if the claim had been timely made, Blaske would not be entitled to "Total Disability" benefits since he was not "Totally Disabled" as defined under the terms of the policies. Blaske argues that the district court erred in granting summary judgment because he provided sufficient evidence to create a genuine issue of material fact regarding his inability to perform his substantial and material duties as a litigation attorney.

The policies provided that Blaske would be entitled to "Total Disability" benefits if he was "unable to perform the substantial and material duties of [his] occupation." However, Blaske and Provident disagree about what occupational duties Blaske performed at Unisys before injuring his back. Blaske contends that his occupation at Unisys was "in-house litigation attorney," whereas Provident characterized Blaske's occupation as a "run-of-the-mill in-house counsel." Although the difference may be a question of semantics, the facts surrounding which duties Blaske performed are all important.

The terms of the policies state that "Total Disability," within the meaning of the contracts, occurs when the insured is unable, due to injury or sickness, to perform the substantial and material duties of the insured's regular occupation. Therefore it is critical to determine what occupational duties Blaske had at Unisys.

Blaske contends that his job at Unisys required him to travel extensively, attend trials, participate in administrative hearings, argue motions, and sit through lengthy depositions and alternative dispute resolution sessions. He contends that his present condition prevents him from performing all of these duties.

Provident disagrees, and argues that Blaske admitted in his deposition and resume that he had other responsibilities, like drafting contracts, reviewing papers, and evaluating agreements, all which could be done notwithstanding his current

10

disability. Provident also points out that Blaske conceded in his deposition that he could still work 3-4 hours per day.

Blaske argues that even though he can still participate in a few litigation activities for a couple of hours, he can no longer assume his 10-12 hour work day as a litigator. He contends that he is simply unable to perform the required duties and responsibilities of an attorney litigator. In addition, Blaske contends that his employment with Coldwell Banker, as a real estate agent, corroborates this proposition. The argument is that since he is unable to work as an attorney litigator, he has tried real estate in an attempt to do the most he is physically able to do. We conclude that this creates a genuine issue of fact for a jury.

### IV. Conclusion

Our review of this record convinces us that there are genuine issues of fact as to: (1)Whether Blaske's claim notice was given as soon as reasonably possible, (2)What job duties Blaske had at Unisys, and (3) Whether Blaske's medical condition rendered him"Totally Disabled," as defined in the terms of the policies.

This summary judgment is **VACATED** and the matter **REMANDED** for trial by a jury.

11