LUCERO, J.,
concurring.
Given my review of the record, and the highly deferential standard of review of the trial court’s opinion, I am counter-intuitively compelled to join the result reached by my respected colleagues in the majority. I write separately because I am troubled by the majority’s discussion of the district court’s finding that working in a large office building is a material duty of Ray’s occupation as an attorney specializing in “major real estate, oil and gas and mining transactions.”
UNUM Life Insurance Company of America (“UNUM”) issued a Long Term Disability Policy (the “Policy”) to the partnership of the national law firm Gibson, Dunn & Crutcher LLP (“GD&C”).[8] Under the Policy, claimants must prove they are disabled. In June 1994, Pamela Ray, a partner working in GD&C’s Denver office, filed a claim with UNUM alleging that she developed an unidentified physical illness that rendered her unable to function as an attorney in her speciality because she could not work in large, high-rise office buildings. After two years of investigation and correspondence with Ray, UNUM denied her claim, concluding that Ray had failed to carry her burden of proof. Particularly, UNUM determined that Ray had failed to show that she could not practice her legal specialty in other environments, such as “at home and most likely [at] sites other than the office where your symptoms began.” Ray then filed suit against UNUM in federal district court. She alleged that her specialty was practicing as a “large transaction real estate, oil and gas and mining” attorney, that this work could only be performed at a large law firm, that “large law firms are virtually all located in large office buildings,” and that she could not tolerate such environments. More than ten years of litigation over UNUM’s decision has preceded this appeal.
The district court held a bench trial pursuant to Federal Rule of Civil Procedure 52, and made the following findings in favor of Ray: (1) Ray’s specialty was “major real estate, oil and gas and mining transactions”[9]; (2) Ray “could not contin *789 ue to practice in her ‘specialty’ with GD&C from her home or some other office location”; (3) “[T]he ability to function in a large office building environment is itself a material duty of Plaintiff’s regular occupation”; and (4) “[E]ven if she could [find equivalent employment], the types of law firms which practice in [Ray]’s specialty are typically located in large office buildings.” Accordingly, the court found that Ray was disabled under the Policy and ordered UNUM to pay benefits.
As the majority correctly notes, we review these findings for clear error. See Anderson v. Comm’r, 62 F.3d 1266, 1270 (10th Cir.1995). In my view, had UNUM presented any evidence challenging these findings or addressed Ray’s evidence in support of such at earlier stages of this litigation, as well as on appeal, I might conclude that the clear error standard has been met. Perhaps UNUM is correct that Ray can work outside large office buildings, but it did not obtain or introduce any evidence from an independent rehabilitation specialist or obtain the opinions of attorneys within her field rebutting Ray’s claim that her speciality requires her to work inside a large, high-rise office building. I simply do not deem it appropriate for an appellate court to reject a district court’s findings of fact based on a party’s uncontested evidence because the finding belies the court’s version of common sense. That is a dangerous road, and one I won’t travel down here.
I am, however, compelled to present a different picture of the evidence. In support of the district court’s findings, the majority opinion cites the following evidence: (1) Ray’s statements to an UNUM representative; (2) a statement made by George Curtis, the managing partner of GD&C’s Denver office, to an UNUM representative; (3) a letter prepared by Karen Clark, a real estate lawyer with GD&C who practices in its Irvine, California office; and (4) a letter prepared by Robert Brown, a real estate lawyer and partner with Sherman & Howard, a Denver-based law firm. Read together, these statements and letters form a web of internal contradictions, and shed little light on whether Ray is genuinely unable to function as an attorney within her field due to her illness.
With respect to whether Ray could practice her specialty in a smaller office location or at home, my colleagues cite three pieces of evidence that provide “substantial” support for the district court. First, Curtis states that having Ray work at home was not acceptable to GD&C because she was unable to “interact with the attorneys and associates for research and training” and because she was unavailable to her clients. Second, Clark notes that “it would be difficult, if not impossible to run a [GD&C] partners’ practice from *790 home.” Third, Brown stresses that physical proximity is critical for real estate lawyers because of the constant need for timely communication as well as client perception, and that Ray could not realistically perform her role as a real estate partner at GD&C at home or from a remote location.
I am highly skeptical that his evidence demonstrates that Ray cannot function in her specialty outside of large office buildings. The state of the record leads me to believe that a lawyer practicing Ray’s specialty can do so at a location other than one of the law firm’s primary offices. Ray’s attorney witness Clark herself practices at one of GD&C’s satellite offices. Clark notes that her work often involves interaction with lawyers from multiple GD&C offices, but gives no indication that she is handicapped in those interactions by her location. Witness Brown recognizes that the “information super highway” — fax machines, email, telephones, computers, etc. — has made it easier to practice at remote locations. Although Brown downplays the ability of real estate lawyers working on large transactions to utilize these technologies, and notes that physical proximity is ideal, he expressly recognizes that some individuals function as real estate attorneys from remote locations. Curtis notes “Ray’s cases and clients have been dispersed to an associate and one lawyer in the Denver office and one in the Orange County [Irvine] office.” Thus, even if Ray’s practice were entirely comprised of referrals from Denver lawyers (a limitation not evidenced by the record), this evidence demonstrates it is possible for Ray’s work to be performed elsewhere. Ray concedes that she was able to substantially function as an attorney at home, although the at-home arrangement was not acceptable to GD&C.
UNUM continually stated in its correspondence with Ray that her practice at GD&C and her position as a partner with that firm is not insured; only her capacity to function in her specialty is insured. See, e.g., Bendixen v. Standard Ins. Co., 185 F.3d 939, 944 (9th Cir.1999) (holding a plan administrator was within its discretion to deny the individual’s disability claim as a matter of law where the evidence showed that claimant could work in her “own occupation” with another employer). I agree that whether Ray can continue to work as a partner at GD&C is irrelevant. However, anomalously, UNUM did not advance an iota of evidence on point to rebut the questionable evidentiary basis of Ray’s claim that she could not work outside the office environment.
With respect to whether she could obtain equivalent employment at another firm, again the evidence does not easily lend itself to Ray and the majority’s interpretation. Brown opines that “[i]f Ms. Ray were to move to another firm to conduct her practice, [the source of her business, i.e. GD&C partners and referrals] ... would immediately disappear.” Clark states that Ray’s complex real estate “practice is not easily transportable and equivalent employment would be difficult if not impossible to find.”
Clark’s letter, however, reveals the reason Ray would have difficulty finding another position in her specialty is that Ray’s billing rate is “above the local rates, [and thus] it is difficult to develop clients from the local community.” For this reason, Clark concludes, “much of our work depends on our being available to our partners.” Clark does not discuss whether Ray could find employment at another firm or obtain her own clients if she were to bill at a lower rate. Moreover, although it may be true that Ray will not receive referrals from GD&C partners if she de *791 parts from GD&C, there is no evidence that she would not gain referrals from partners at whatever law firm she would join, or even obtain local clients. Ultimately, both the district court and the majority have accepted, without comment, Ray’s claim that she must be considered disabled so long as she is precluded from obtaining similar employment at an equivalently inflated salary. To me, an individual’s unwillingness to accept a lower salary because she currently charges a premium above local market rates is simply not a basis for declaring that individual disabled. Again, UNUM fails to advance this point in its briefs, or present any evidence that Ray would be able to obtain any other employment in her field. Both Brown and Clark argue that Ray would be unable to find alternate employment with a “substantial law firm” because none of her clients would follow her to another firm. However, they are contradicted by Ray’s own admission to UNUM that, upon her departure, some of her clients and customers left GD&C and hired other lawyers.
There is also the matter of whether all firms that practice in Ray’s specialty are located in large office buildings. On this point, the majority and district court conflate the need for the resources of a large firm with the claimant’s presence in one of the main offices of the firm. For example, the majority states that “[a]lthough all large law firms may not be located in downtown large office buddings or highrises, large law firms must be located in buildings large enough to accommodate their many employees.” (Maj. Op. at 785.) Even assuming that Ray needs the resources of a large law firm to practice her specialty, the majority ignores the prevalence of large firm satellite offices, such as that occupied by Clark, who practices in GD&C’s Irvine, California office. Moreover, I am highly skeptical that every lawyer practicing in complex real estate transaction work does so in a large law firm in a large office building.
Notwithstanding the crippled nature of the plaintiffs case, on deferential consideration of the trial court findings based on this hopelessly one-sided record, I am compelled to join in the result reached by the majority. Despite several suggestions by its employees, UNUM never attempted to determine the nature of Ray’s specialty, or look into whether she could function in this specialty outside of a large office building. Specifically, UNUM never obtained the opinion of other lawyers practicing Ray’s specialty or sought the opinion of a vocational rehabilitation specialist with knowledge of the material duties of her specialty.[10] Instead, from the outset, UNUM denied Ray’s claim on the ground that she could probably work from home. The senior claims analyst at UNUM charged with reviewing Ray’s file conceded that it was “probably true” that Ray could not work from home. Although there are substantial evidentiary challenges that could have been advanced, UNUM never engaged in a meaningful confrontation with that evidence. Before us, UNUM does not even address Ray’s evidence re *792 garding the district court’s factual findings before finally joining issue in its reply brief, where it briefly attempts to refute Curtis’ statement.[11]
UNUM denied Ray’s claim on the basis that she could function as a “major real estate, oil and gas and mining transaction” attorney outside a large office building environment without demonstrating what that role requires. Faced as I am with the uncontroverted state of the record before me, I am compelled to agree that we must affirm.[12]

. The Policy provides:
When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of the physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:
1. disability; and
2. regular attendance of a physician.
An insured is disabled under the Policy if "because of injury or sickness the insured cannot perform each of the material duties of his regular occupation.” “Regular Occupation” for attorneys is defined as "the specialty in the practice of law which the insured was practicing just prior to the date the disability started.”

. Although UNUM casually asserts that the district court cited no authority for defining *789 her specialty so narrowly, UNUM has failed to cite a single case substantiating its argument such that we could declare it clearly erroneous. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir.1995) (holding that issues not adequately briefed will not be considered on appeal). Upon review, however, I note that in general attorneys’ specialties for insurance purposes have not been defined based on the size and complexity of the matters on which they worked. Moreover, I have not discovered any circuit case wherein courts have permitted such a narrow definition of specialty in the legal field. See, e.g., Blaske v. Provident Life & Accident Ins. Co., 162 Fed.Appx. 943, 947 (11th Cir.2006) (unpublished decision) ("litigation attorney”); Heffernan v. UNUM Life Ins. Co. of Am., 101 Fed.Appx. 99, 106 (6th Cir.2004) (unpublished decision) ("litigation attorney”); Lain v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 340 (5th Cir.2002) ("real estate, banking, and finance law” attorney); Kerwin v. Paul Revere Life Ins. Co., 6 Fed.Appx. 233, 236 (6th Cir. 2001) (unpublished decision) (“trial attorney”); Kearney v. Standard Ins. Co., 175 F.3d 1084, 1086 (9th Cir.1999) ("trial lawyer”).

. Compare Reeve v. Unum Life Ins. Co. of Am., 170 Fed.Appx. 108, 110-111 (11th Cir. 2006) (unpublished decision) (noting that before denying the claim, UNUM "performed a labor market survey” to determine the material duties of claimant's occupation and obtained the opinion of a "vocational rehabilitation consultant") (unpublished decision); Heffernan v. UNUM Life Ins. Co. of Am., 101 Fed.Appx. 99, 105 (6th Cir.2004) (unpublished decision) (noting UNUM conducted a labor market survey to determine the material duties of a "litigation attorney” before denying the claim).

. This is not to say UNUM mounted no challenge to Ray’s claim that working in a large office building was a material duty of her specialty. It relied upon statements made by its medical examiners that Ray had "work capacity” because she could likely perform the functions of her occupation at home or at another location. However, as the district court correctly noted, ”[n]one of the physicians or other persons reviewing [RayJ’s claim on behalf of UNUM demonstrated any understanding of 'each of the material duties of her regular occupation.’ ”
UNUM also argued that Ray could plainly practice her specialty at a smaller firm because she worked as a partner at such a firm before she joined GD&C. The majority rejects this argument on the ground that the Policy ensures her ability to function in the specialty she practiced at the time she became disabled, thus the "focus is upon Ray’s real estate practice and firm responsibilities as a partner at GD&C and not upon her practice when she began her career.” (Maj. Op. at 785-86.) Once again, the majority misunderstands the inquiry. The focus of our analysis is whether UNUM was correct in determining that Ray could function as an attorney practicing her specialty at another location. To the extent that Ray practiced her specialty at a small local firm before joining GD&C, I find it highly persuasive with respect to whether she could continue her practice elsewhere. However, because Ray’s specialty as defined by the district court includes “major real estate ... transactions,” and there is no evidence she performed real estate work before joining GD&C, her prior work experience does not go toward her ability to perform her specialty elsewhere.

. As a general matter, UNUM's ill-advised concessions throughout this dispute coupled with its lack of careful attention to the factual record provides its downfall. In the words of Charles Dickens: "Now what I want is, Facts____ Facts alone are wanted in life. Plant nothing else, and root out everything else.” Charles Dickens, Hard Times 1 (1854).